Gerald L. DAVIS, Appellant,

v.

Harry G. ASHLOCK and W. L. Chowning, Jr., doing business as Argentine Transit Lines and Quivira Bus Line, Defendants,

Exchange Insurance Association, Garnishee-Respondent.

No. 47281.

Supreme Court of Missouri,

Division No. 2.

Sept. 12, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 10, 1960.

Robert A. Meyers, Edward F. Aylward, John J. Cosgrove, Kansas City, for plaintiff-appellant.

Harry P. Thomson, Jr., Frank J. Stark, John R. Caslavka, Kansas City, for Garnishee-Respondent Exchange Ins. Assn. Shughart & Thomson, Kansas City, of counsel.

LEEDY, Judge.

Garnishment proceeding (on execution) brought by Gerald L. Davis against Exchange Insurance Association as garnishee of Harry G. Ashlock and W. L. Chowning, Jr., copartners doing business as "Argentine Transit Lines" and as "Quivira Bus Line." Tried without a jury, the court made findings of fact and gave conclusions of law, and in conformity therewith entered judgment dismissing the proceeding and releasing the garnishee, and the execution creditor appealed.

Davis, as plaintiff in the principal action, had obtained judgment in the Circuit Court of Jackson County against the defendants (Ashlock and Chowning, as copartners doing business under the firm names and styles above mentioned) in the sum of $25,-000 for personal injuries sustained by him as a result of a collision between a motorcycle upon which he was riding and a 1946 Yellow Coach bus owned and operated by defendants, and carrying the designation "Argentine Transit Lines" upon it. The casualty occurred in Kansas City, Kansas.

At all times referred to herein, the defendants were engaged in the bus business, as copartners; that is, in transporting passengers for hire over certain city streets and public highways in particular areas hereinafter described. They did business under the two distinctly different firm or trade names indicated above. Their operations were both interstate and intrastate; in the former category, between the states of Kansas and Missouri, and in the latter, in Wyandotte County, Kansas.

The garnishee was the insurance carrier of defendants. It had issued to them two separate public liability policies, one in their names as partners doing busi-

ness as Argentine Transit Lines, and the other in their names as partners doing business as Quivira Bus Line, both of which policies were outstanding and in effect at the time of the casualty, June 10, 1954. The first mentioned, No. X–85758, the "Argentine Transit Lines" policy (covering 5 regularly operated 29-passenger buses, and 4 extra buses of similar capacity, including the 1946 Yellow Coach bus just referred to) limited the garnishee's liability for bodily injuries to $5,000 per person; in the other policy, No. X–85773 (covering "Quivira Bus Line"), the limit of such liability was fixed at $10,000 for each person. The only vehicle specifically mentioned or described in this latter policy was a 1947 Dodge, Airport 7-passenger Sedan, bearing a certain motor number. The bus involved in the accident was specifically described in the "Argentine Transit Lines" policy, but not in the "Quivira Bus Line" policy. The garnishee had paid plaintiff the sum of $5,000 (the full extent of its liability under the "Argentine Transit Lines" policy) plus $370 interest thereon, making a total of $5,370 with which the $25,000 judgment had been credited. The object of the instant proceeding is to establish that the garnishee is liable for an additional sum of $10,000 under the "Quivira Bus Line" policy issued by it, and to enforce payment thereof. Jurisdiction is in this court under Senate Bill No. 7 (approved May 18, 1959), 70th General Assembly, § 477.040, RSMo 1949 and V.A.M.S., as amended, which increased the monetary jurisdiction of the several courts of appeals to $15,000, but provided that the supreme court should continue to have exclusive appellate jurisdiction in those cases where, as here, notices of appeal were filed prior to the effective date of said act, January 1, 1960.

.. Plaintiff's theory of recovery is that Argentine Transit Lines and Quivira Bus Line were not separate businesses, separately conducted, but constituted one overall operation, by reason of which the "waiver of description" (of vehicles insured) endorsements placed upon Quivira Bus Line's policy No. X–85773 (as required by the Interstate Commerce Commission and the State Corporation Commission of Kansas under rules made pursuant to applicable statutes, Chap. 8, Title 49, § 315 U.S.C.A., and 66–1,128 General Statutes of Kansas) extended the coverage of said policy to the bus involved in the casualty.

The endorsement required by the Interstate Commerce Commission made the garnishee liable to pay any final judgment rendered against the insured (with exceptions not here pertinent) for personal injuries "resulting from negligence in the operation, maintenance, or use of motor vehicles under certificate of public convenience and necessity or permit issued to the insured by the Interstate Commerce Commission * * * regardless of whether such motor vehicles are specifically described in the policy or not." That endorsement further provided that the liability of the insurer "extends to such bodily injuries * * * whether occurring on the route or in the territory authorized by the insured or elsewhere, except as follows: No exceptions."

The pertinent provisions of the endorsement placed on the policy under the requirements of the State Corporation Commission of Kansas read as follows: "It is further understood and agreed that the company waives a description of the motor vehicles, trailers or semitrailers insured hereunder and the policy is hereby amended and extended so as to cover any and all motor vehicles, trailers and semitrailers operated or used by the assured pursuant to the certificate, permit or license issued by the State Corporation Commission of Kansas."

The critical facts were found by the court to be that the "routes of Quivira Bus Line were not identical or the same as the routes covered by defendants d/b/a Argentine Transit Lines"; that defendants "kept separate records concerning the operations of Quivira Bus Line and Argentine Transit Lines, made separate reports to the regulating agencies on each operation and op-

erated the Quivira Bus Line and the Argentine Transit Lines as separate operations"; that "Quivira Bus Line and Argentine Transit Lines were operated separately * * * and said operations did not coincide but were separate and apart from each other * * *." The court further found that the bus involved in the collision "was not engaged in any operation of the Quivira Bus Line under or pursuant to any authority or permit issued by the Kansas Corporation or the Interstate Commerce Commission at the time of said collision"; that said bus was described in "garnishee's policy No. X–85758 issued to defendants d/b/a Argentine Transit Lines, as the [an] insured vehicle but was not described or referred to in garnishee's policy No. X–85773 issued to defendants d/b/a Quivira Bus Line, a 1947 Dodge Airport seven passenger sedan being described in that policy."

■■ Appellant's first point is that these findings are not supported by substantial evidence, and are contrary to the evidence. The trial having been "upon the facts without a jury," review on appeal is "upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." § 73.01, Rules of Civil Procedure, V.A.M.R. As said in Turner v. Mitchell, Mo., 297 S.W.2d 458, 465: "While we are not bound by the trial court's findings and have the authority as well as the duty to consider the evidence and make our own findings, we will not set aside the judgment unless we find it to be clearly erroneous and will give due regard to the better opportunity of the trial judge to pass on the credibility of witnesses who orally testified before him."

■ The substantive rights of the parties are governed by the law of Kansas, under which it is conceded by plaintiff that he had the burden of showing that the bus involved in the collision was at that time operated in the business or service authorized by the certificate of convenience and necessity or permit issued to defendants doing business as Quivira Bus Line.

In addition to the facts already indicated, the evidence discloses without dispute that the defendant-partners had, since 1952, held certificates of convenience and necessity from the State Corporation Commission of Kansas and the Interstate Commerce Commission by which they were authorized to operate intrastate and interstate, respectively, under the name Quivira Bus Line. The operation authorized by the Kansas Corporation Commission's certificate ("as a common carrier by motor vehicle in the transportation of persons and light hand baggage") over Route 3283 was between Quivira Lake, Kansas, and the Kansas-Missouri state line (and return) by these routes:

"Via the Argentine Holliday Road to Kansas City, Kansas, thence via City Streets to the intersection of Woodland Blvd., and Steele Road, thence east on Steele Road to the intersection of Steele Road and 14th Street, thence north on 14th Street to the City Limits of Kansas City, Kansas, thence via city streets to the Missouri-Kansas State Line and return over same route, with service authorized at all intermediate points along said route."

"From the junction of Argentine-Holliday Road and O'Hara Road, thence north via O'Hara Road to the junction of O'Hara and Swartz Road thence east via Swartz Road to the Junction of 42nd Street, thence south via 42nd Street to the Junction of Strong Avenue, thence east over City Streets to Missouri-Kansas State Line and return over same route."

By an extension of this certificate there was included therein a designated route (a loop) through Highland Crest Addition (an area lying immediately to the south

and west of the starting point of said loop), as follows:

"Starting at 34th Street (formerly 32nd Street) and Steel Road, thence South on 34th (formerly Antone Road or 32nd Street) to Woodend Road, thence west on Woodend Road to 37th Street, thence north on 37th to Shawnee Drive thence west on Shawnee Drive to 42nd Street (formerly Carlisle Road) thence north on 42nd Street to Gibbs Road thence west on Gibbs Road to 51st Street, thence South on 51st Street through Highland Crest Addition to Crest Drive, thence southwesterly on Crest Drive to 53rd Street, thence east on Locust Street to Shawnee thence northeasterly on Shawnee Drive to 47th Street, thence north on 47th Street, to Woodend Road, thence west on Woodend Road to 48th Street thence southeasterly on 48th Street to Shawnee Drive and return over the same route."

The Interstate Commerce Commission's certificate of convenience and necessity authorized the holder (defendant-partners doing business as Quivira Bus Line) "to engage in transportation in interstate and foreign commerce as a common carrier by motor vehicle * * * of passengers and their baggage, over a regular route,

"Between Lake Quivira, Kans., and Kansas City, Kan.-Mo., and all intermediate points:

"From Lake Quivira over Argentine-Holliday Road to junction Hester Road, thence over Hester Road to Kansas City, Kan.-Mo., and return over the same route.

"Between Lake Quivira, Kans., on the one hand, and, on the other, Holliday, Kans.:

"From Lake Quivira over unnumbered highway (known as Argentine-Holliday Road) to Holliday, and return over the same route."

Appellant introduced in evidence the deposition of W. L. Chowning, Jr., one of the partners, which, with reference to their operation of Argentine Transit Lines and Quivira Bus Line, was to the following effect: That he and his partner held the permits or certificates from the Interstate Commerce Commission and Kansas Corporation Commission for the Quivira Bus Line as hereinabove mentioned, but they had no permits or licenses with reference to Argentine Transit Lines, except city occupation licenses issued both by Kansas City, Kansas, and Kansas City, Missouri; that they commenced operating Quivira Bus Line in the spring of 1952 upon purchasing it from the former operators; that they commenced the business of Argentine Transit Lines "back in 1950"; that on June 10, 1954, the routes of the Argentine Transit Lines were those described in footnote 1 below, and the routes of Quivira Bus Line were those described in footnote 2 below; that "the headquarters of both of

---

1. Starting "at Forty-second and Powell and went to Forty-second and Strong and then went east on Strong to Twenty-sixth Street and south on Twenty-sixth to Metropolitan and east on Metropolitan to Twenty-first and south on Twenty-first to Ruby, east on Ruby to Twelfth, north on Twelfth to Argentine Boulevard and then it went in a northeasterly direction on Argentine to Kansas Avenue and east on Kansas Avenue to Twenty-third Street in Kansas City, Missouri, * * * east on Southwest Boulevard to Baltimore and north on Baltimore to Ninth." The route "from Turner [came in] on Swartz Road to Forty-second and Powell * * * and then back over the same route."

2. "There were two routes to it. One of them came in from Quivira Lake, come into Argentine-Holliday Road to Forty-second and Metropolitan, and come east on Metropolitan to Thirty-second Street and then it went north on Thirty-second to Steele Road, which is Thirty-fourth and Steele there, and then it went east on Steele Road to Fourteenth Street and it went north on Fourteenth Street to Douglas, east on Douglas to Shawnee Road and went in a northeasterly direction over Shawnee Road to Twenty-ninth and Southwest Boulevard and then it went from Southwest Boulevard to Main Street and down Main to Ninth. * * * Then we've got one other extension of

these transportation systems were located at 1800 Steele Road"; that at the time in question they had three regular drivers and one relief driver (besides himself and his partner) in the operation of Argentine Transit Lines, or a total, including himself and his partner, of six drivers; that for the Quivira Bus Line they had two regular drivers and one relief driver (this same driver relieved on both Argentine Transit Lines and Quivira Bus Line), but that he and his partner did the relief work for Quivira Bus Line "the biggest part of the time." (The accuracy of this statement with respect to a relief driver other than the partners themselves on the Quivira Bus Line would seem to have been impaired on later redirect examination, the details of which are not of enough importance to reproduce, it being sufficient to say that it is not clear from his testimony whether the same relief driver worked on both the Argentine Transit Lines and the Quivira Bus Line.) The witness further testified to making the annual reports required by the Kansas Corporation Commission as to the equipment used in the operation of Quivira Bus Line; and he identified certified copies of such reports for the fiscal years 1953–1954 and 1954–1955, which showed the registration of a single vehicle, to-wit, the 1947 Dodge 7-passenger automobile, for which the Commission issued a tag. He likewise identified a certified copy of "Motor Carrier Operator's Report for the month of June, 1954, Route 3283," made upon oath and under his signature, reflecting that only one vehicle, the 1947 Dodge 7-passenger automobile, was used in the operation of Quivira Bus Line during that month. He also testified that none of the vehicles used in the operation of Argentine Transit Lines carried permit numbers of the Interstate Commerce Commission or the Kansas Corporation Commission.

On cross-examination the witness stated that at the time in question they had only the 7-passenger Dodge for use on the Quivira Bus Line, and, as he thought, four [regular?] buses for use on the Argentine Transit Lines; that part of the normal procedure prevailing at that time was to transfer passengers from the Quivira bus at the corner of 34th and Steele Road to the Argentine Transit Lines, both coming into Kansas City, Missouri, and passengers leaving Kansas City, Missouri; that the employes working on the Quivira Bus Line and those working on the Argentine Transit Lines were all paid from the same account; that their books were kept as a single unit, but that "they was kept different. What I mean, the Quivira Line was marked down as to how much it took in and how much expenses went out"; that they did not give out transfers, but persons to be transferred from the Quivira bus to the Argentine Transit would "just have to be there, get off one and on the other, if the buses met. We just took a chance on the people"; there was just one transfer point, and it wasn't necessary to give transfers; they did not charge additional fare for transferring from one line to the other, and the driver did not keep any record of transfers.

As to the hours during which Quivira Bus Line operated, and in more detail as to the transfer practice and operation, the witness testified: "We started in at 6 o'clock in the morning, and we operated until 10, then we started in again at 3 in the afternoon and operated until 6"; that between 10 a. m., and 3 p. m., the line "wouldn't operate from Quivira in—it wouldn't operate at all, not the Quivira line."

"Q. You said something about passengers on the Quivira transferring to the Argentine Transit Line. A. Well, at

the Quivira route that comes out of Highland Crest and comes down Thirty-fourth Street to steele Road. It would

be coming north on Thirty-fourth and would turn east on Steele Road."

that time I had a line coming in from Highland Crest Addition that went downtown.

"Q. Was that the Quivira? A. No, it was the Argentine at that time, and then it went down Steele Road and we transferred the passengers there * * * at Thirty-fourth and Steele.

"Q. In other words, you would run the Quivira Bus Line in as far as Thirty-fourth and Steele? A. Yes.

"Q. And you'd terminate the operation there? A. Yes.

"Q. Then the passengers would leave that line and go onto the Argentine bus line? A. Yes.

"Q. And continue their journey into Kansas City, Missouri? A. Yes, sir. There was trips in the morning that went plumb through, working trips.

"Q. You say went 'plumb through.' You are referring to Quivira? A. Went plumb from Quivira to Ninth and Main.

"Q. And also trips in the evening? A. That went plumb through, yes * * * if I remember right, I think there was two trips in the morning and the trip in the afternoon that they transferred on. That was the only time.

"Q. In other words, you stopped the Quivira Line operation at Thirty-fourth and Steele on those occasions and the passengers transferred onto the Argentine bus? A. Yes, sir.

"Q. And continued their trip into Kansas City? A. Yes, sir."

Mrs. Mary Shannon, a neighbor of the Davises, testified that in June, 1954, she used both the Argentine buses and the Quivira bus; that the Argentine buses were "similar to a Public Service bus," and the Quivira bus "most of the time" was a black Dodge or Packard, 9-passenger automobile, similar to a funeral car, but "occasionally it was a bus"; that the type of bus operated through Highland Crest Addition was a "regular bus" similar to the ones operated by the Public Service Company, and she did not see the black car that was used on the Quivira line running on the Highland Crest route; that the buses she rode "over to town" were identical in appearance with those on the Highland Crest route, and with the one she had ridden out to Quivira Lake; she did not notice what name any of the buses bore other than the route signs which were up in the front windows. She further testified that she would board the Argentine bus at 34th and Steele Road (three blocks from her home) at 8:45 or 9:45 a. m., ride "over to town," returning in the evening at 5:45; passengers were transferred at 34th and Steele from the Quivira bus to the Argentine bus that she would be riding, and "a lot of times we had to wait for them—for the Quivira bus"; they would meet the Quivira bus on their return trip in the evening.

Plaintiff himself testified that he was familiar in a general way with the route traveled by the Argentine buses (by which he meant those with the name "Argentine Transit Lines" on them); that he saw such buses daily; that he also observed "the Quivira bus" frequently, "three or four times a week, maybe," in the Argentine District and on 34th Street and Steele Road; that immediately prior to June 10, 1954, and as often as four or five times a week, at approximately the same hour that the accident happened, he had seen passengers getting off an Argentine bus at this intersection (34th and Steele Road), and transferring onto the Quivira bus; that the Argentine bus was a large cream colored public conveyance similar to the Public Service Company's buses, "and the Quivira bus that they was using at that time was a small—I believe it was a 9-passenger DeSoto"—a large automobile, black in color. Plaintiff further testified that prior to June 10, 1954, he had seen in the Quivira area buses marked Argentine traveling "on Metropolitan, maybe a half a mile from Quivira, in that neighborhood"; that

during the same time, and on perhaps as many as a half dozen occasions he observed Argentine buses on Holliday Road, and they were carrying passengers; that the buses operated through Highland Crest Addition "was a large bus similar to the Public Service buses in Kansas City, Missouri," and had a name on the side, Argentine Transit Company, Transit Line"; that he saw these buses being operated through Highland Crest Addition for a year or more prior to June 10, 1954.

On January 25, 1954, defendants were requested by letter from the licensing authorities of Kansas City, Missouri (Plaintiff's Exhibit 15) to furnish (for statistical purposes) the following information respecting their operations: "(1) The route your buses follow from the time they cross the city limits until they arrive at your Kansas City, Missouri terminus; also the reverse route when leaving Kansas City, Missouri. (2) Total mileage of the trip and the mileage within Kansas City, Missouri. (3) Number of daily trips in and out of Kansas City, Missouri. (4) The gross weight per vehicle. (5) Kindly furnish copy of your time tables." Defendants responded to this request on February 2, 1954, by letter (Plaintiff's Exhibit 13), the text of which appears in footnote 3.

The time schedule thus furnished (Plaintiff's Exhibit 14) refers only to the Highland Crest route, as will appear from the list of points along the route at which arrival or departure times are shown, namely: "47th & Shawnee Rd., 51st & Gibbs Rd., 42nd & Gibbs Rd., 42nd & Shawnee Rd.,

---

3. "In answer to your letter of January 25, I have listed below the information which you requested.

Argentine Turner Bus Route—Starts at 57th Swartz Rd., east on Swartz to 56th, north to Clark, east on Clark to 55th, south on 55th to Swartz, east on Swartz to 42nd, south on 42nd to Strong, east on Strong to 26th, south on 26th to Metropolitan, east on Metropolitan to 21st, south on 21st to Ruby, east on Ruby to 12th street, north on 12th to Argentine Blvd., northeast on Argentine Blvd. to Kansas Avenue, east on Kansas Avenue to 23rd street to Southwest Blvd., east on Southwest Blvd. to Baltimore, north on Baltimore to 9th street, west on 9th street to Wyandotte, south on Wyandotte to 14th street, east on 14th to Baltimore. Return over the same route. Total mileage of the trip is 10.2 miles. Number of trips per day is 26. The bus crosses the state line at 23rd and Kaw River. State line to 9th & Baltimore 2.6 miles.

Highland Crest Bus Route—Starts at 47th Shawnee Rd., north to Woodend, west on Woodend to 48th street, south on 48th street to Shawnee, southwest on Shawnee Rd. to Locust, west on Locust to 53rd, south on 53rd to Crest drive, east on Crest drive to 51st street, north on 51st to Gibbs Rd., east on Gibbs to 42nd, south on 42nd to Shawnee Rd., east on Shawnee Rd. to 37th, south on 37th to Woodend, east on Woodend to 34th, north on 34th to Hedgeman, east on Hedgman to 28th, north on 28th to Shawnee Rd., west on Shawnee Rd. to

34th, north on 34th to State Rd., east on State Rd. to 14th, north on 14th to Douglas, east on Douglas to Shawnee Rd., east on Shawnee Rd. to Graystone Blvd. to 30th street where we cross the state line from 30th Southwest Blvd. East to Main street, north on Main to 7th, west on 7th to Deleware, south on Deleware to Main, we return over the same route. Total miles on this route is 13.5 miles. From state line to 7th Deleware is 3.2 miles. Number of trips per day is 13.

Quivera Bus Route—Start at Quivera Lake, east on Argentine Holiday Rd. to 42nd Metropolitan, east on Metropolitan to 34th, south on 34th to Steele Rd. Passengers are then switched to the Highland Crest bus and on to 9th Main in Missouri. Total mileage of the trip is 14.3 miles. From state line to 9th Main is 3.2 miles.

Gross Weight of Buses

| | |
|---|---|
| 1 yellow coach | 16.000 lbs. |
| 1 white | 17.040 |
| 1 Ford Transit | 11.204 |
| 1 Superior Coach | 11.300 |
| 1 twin coach | 11.400 |
| 1 twin coach | 11.400 |
| 1 twin coach | 11.400 |
| 1 twin coach | 11.400 |
| 1 twin coach | 11.400 |

Enclosed is a time schedule. I will send the others as soon as one is available to me.

Very sincerely yours,
Argentine Transit Line
W. L. Chowning, Jr."

34th & Woodend, 34th & Steele Rd., 18th & Steele Rd., 14th & Douglass, 7th & Shawnee Rd., 30th & So. W. Blvd., 9th & Main St." Whether "the others" referred to in the closing sentence of Exhibit 13 (which the writer would forward as soon as available) were for the Argentine-Turner routes or the Quivira Lake route, or all of them, is not clear—or important.

The only witness present in person and called to the stand by garnishee was the insurance broker through whom the two policies were issued. His testimony was to the effect that they were arranged for differently, the rate classifications were different (because Argentine Transit Lines was not under the jurisdiction of any public regulatory body), the limits were different, and the equipment was different, and that during the period in question there was no change in the schedule of equipment.

The chief clerk of the Kansas Corporation Commission testified, on the part of the garnishee (by deposition), to the effect that at the time of the casualty complained of, the Commission had not issued any permit to defendants for any dual or joint operation of Argentine Transit Lines and Quivira Bus Line. He also identified the same documents, but under different exhibit numbers, identified by defendant Chowning in his deposition, i. e., as to the equipment registered under the Quivira Bus Line permit or certificate being only the 1947 Dodge, and reflecting further that the partners had only that one vehicle operating on route 3283 in the month of June, 1954.

So much for the evidence concerning the general operational aspects of the business or businesses (as the case may be) carried on under the two trade or firm names, Argentine Transit Lines and Quivira Bus Line. Pin-pointing, now, the evidence in relation to the happening of the casualty out of which plaintiff's judgment (and this proceeding) arose, we find plaintiff testified merely that the bus (bearing the designation "Argentine Transit Lines") involved in the accident was,

at the time the impact occurred, headed for the southeast corner of 34th and Steele Road, the point at which he had seen transfers taking place from one bus to the other—"the Argentine Transit buses and the other Quivira bus." (His petition in the original action, which is before us, alleges that he was "operating his 1941 Harley Davidson motorcycle in a northerly direction on Steele Road and a Yellow Coach Bus owned by the defendants was being operated in a southerly direction on Steel Road. As the two vehicles thus approached the intersection of 34th Street the defendants' bus started a left turn to go east on 34th Street and struck with great force and violence this plaintiff and his motorcycle.") He could not answer (did not know) whether there were any passengers on the Argentine Transit Lines bus that was involved in the collision, but he saw no transfers from that bus to any other bus that day, and he did not see the Quivira bus, the large Dodge automobile, around the scene of the accident.

In Chowning's deposition (introduced by plaintiff) he testified in relation to the circumstances surrounding the accident as follows: That the accident happened at 34th and Steele; that the bus involved was a 1946 Yellow Coach bus, and had a sign on it of Argentine Transit Line; that there was no permit number displayed on that bus (or on any other vehicle or bus used in the operation of Argentine Transit Lines) with reference to their showing the defendants' ICC or KCC numbers. Asked if he knew "for what purpose that particular bus was being used at the time of the accident," the witness answered, "It was being used to haul passengers on the Argentine Transit Line." (Taken in connection with the other testimony, we think it clear that the witness was referring to or meant "date" or "day" of the accident rather than the precise moment, or time thereof.) He further stated that Ralph Fanning, the driver of the bus, was "coming into the garage for his lunch hour"; that the route Fanning took was "from Strong Avenue south on Thirty-

fourth to Steele and then turned east on Steele to come into the garage at Eighteenth Street"; that the driver lived about a half a block from the garage, and always drove to the garage for his lunch.

The garnishee offered in evidence portions of a deposition given by the driver of the Argentine bus involved in the collision, Ralph Fanning, to the following effect: That he was employed by Argentine Transit Lines, and had been since 1951; that the collision occurred at approximately 12:45 p. m.; that he had gone to work that morning at 6 o'clock; that he got off at 6:00 at night, with about an hour off for lunch, from 1:00 till 2:00, then go back and work until "7:00"; that his route was "from Kansas City, Missouri, to Argentine, but I was going to the garage [18th and Steele Road] when that happened"; that the purpose of his going to the garage was to take his lunch period (he always went there at noon—"See, I live just about four doors from the garage"); there was no mechanical difficulty, and there were no passengers on the bus; that he had started the trip to the garage from 42nd and Strong Avenue; that 34th and Steele Road was not on his regular route, but he traveled [by] it every morning and every night, going and coming from the garage, but it was not on his regular route.

As stated, plaintiff vigorously challenges the trial court's finding that Quivira Bus Line and Argentine Transit Lines were operated by defendants as businesses separate and apart from, and not coinciding with, each other. He contends that it conclusively appears from the evidence that the two lines constituted one over-all operation, and not separate businesses, and hence the bus involved in the collision was within the coverage of the Quivira policy as extended by the "waiver of description" endorsement. In this connection, it is pointed out that the headquarters of both lines were at one office, and all of the buses were stored in one garage (18th and Steele); that the employes of Quivira and Argentine were all paid from the same account; that defendants'

books were kept as a single unit (but with separate notations as to amounts taken in by, and the expenses of the two lines), and that the same relief driver served on both lines. These facts and circumstances are not necessarily inconsistent with the theory of separate operations of the two lines, but, for whatever they may be worth, they will be borne in mind and considered in connection with certain other and more cogent elements urged by plaintiff to which we are about to refer.

The first of these is the matter of routes traversed by the buses, it being plaintiff's earnest insistence that "checking the routes authorized to 'Quivira' and the routes travelled by 'Argentine' reveals that they are one and the same operation." Accordingly, we have set forth (perhaps at an unwarranted sacrifice of brevity) the courses of the several bus routes of the lines in question as variously fixed or described in the evidence, either orally or by paper-writings. In the absence of a map or plat of the territory served by defendants' buses (none having been offered in evidence), it has been impossible for us to do more than make a rough approximation of such courses and routes, but, even so, that approximation does not run counter to the finding made by the trial court that "said routes of Quivira Bus Line were not identical or the same as the routes covered by the defendants d/b/a Argentine Transit Lines." It is quite true that it does show (and garnishee has admitted throughout) that part of the Argentine Transit Lines routes cover somewhat the same area as the Quivira Bus Line. It would serve no purpose to point out the portions which coincide, and those where deviations or differences occur because, in the view we take, the matter of routes is not of controlling importance in determining, upon the instant record, whether the two bus lines constituted separate business entities, or one. There is, indeed, no evidence as to how the routes of Argentine Transit Lines were fixed or determined, although in the garnishee's brief it is stated that they "were defined by the joint cities

of Kansas City, Kansas, and Kansas City, Missouri"; but no page reference to the transcript is made, and we have been unable to locate any such evidence. The oral testimony by a single witness as to the few occasions during the swimming seasons when large buses of the Argentine type were used in taking passengers to and from Quivira Lake was too inconclusive and fragmentary to be persuasive on the issue of a single over-all operation; and so was plaintiff's own oral testimony in reference to having seen Argentine buses carrying passengers at certain places on Quivira routes.

Plaintiff's proofs show that defendants started in the business of operating Argentine Transit Lines "back in 1950," thus antedating their acquisition and operation of Quivira Bus Line. It does not appear whether the routes of Argentine Transit Lines were or were not changed after defendants acquired Quivira Bus Line. As we have seen, the latter was and is a regulated activity, under the jurisdiction of Interstate Commerce Commission and the State Corporation Commission of Kansas, whereas there is no proof or even the slightest suggestion that Argentine Transit Lines was under the governance or restraint of any such regulatory body. The two municipalities required only city occupation licenses. No reason has been suggested why, in this situation, Argentine Transit Lines was not free to operate along routes partially the same as or overlapping those authorized to Quivira Bus Line. In any event, it does not appear that their operations in this regard were referable to the authority conferred under Quivira's permits or certificates of convenience and necessity.

The feature of the case that has given us concern is the admitted practice of transferring passengers at certain hours or on certain runs from the Quivira bus to Argentine buses, and vice versa, at 34th and Steele Road. As we have seen, the other evidence concerning the operation of the two lines is consistent with the trial court's finding that they were operated by defendants as businesses separate and apart from each other, and not coinciding, and so on that issue the remaining inquiry is whether the existence of the transfer practice compels a contrary finding.

It will be recalled that there was no general or universal system of transfers between the two bus lines, but the practice was limited to a single point and to only a part of the whole number of runs or schedules of the Quivira bus—"two trips in the morning and one in the afternoon that they transferred on," was Chowning's recollection—so that the Quivira bus did, in fact, traverse the entire route between Quivira and downtown Kansas City, Missouri, on some of its schedules. We are of the opinion that this limited transfer practice, as hereinabove detailed, did not have the effect of so completely integrating the operations of the two lines as to compel the finding sought by plaintiff that they constituted and became one over-all operation, and not separate businesses.

■ We know judicially that bus and other motor carrier operations not infrequently require temporary or other substitution or loan of vehicular equipment, and no doubt it was to protect the public from consequences of that practice that brought about the requirement by regulatory bodies of "waiver of description" endorsements. The Kansas cases (as well as those from a variety of states) attest the proposition that under such endorsements the issue of coverage turns upon whether the offending vehicle was being used in the operations authorized by the permit ("pursuant to" or "under" are the words employed), and, as we have noticed, the burden is upon plaintiff to so show. Smith v. Republic Underwriters, 152 Kan. 305, 103 P.2d 858; Schoonover v. Clark, 155 Kan. 835, 130 P.2d 619. Sec, also, Putts v. Commercial Standard Ins. Co., 10 Cir., 1949, 173 F.2d 153; Trinity Universal Ins. Co. v. Cunningham, 8

Cir., 1939, 107 F.2d 857; Foster v. Commercial Standard Ins. Co., 10 Cir., 1941, 121 F. 2d 117; Hawkeye Casualty Co. v. Halferty, 8 Cir., 1942, 131 F.2d 294; Miller v. State Auto Ass'n, 74 N.D. 306, 21 N.W.2d 621; Briggs v. Burk, 172 Kan. 375, 239 P.2d 981; Travelers Mut. Casualty Co. v. Herman, 8 Cir., 1941, 116 F.2d 151. And so, under these authorities, it follows that notwithstanding the separateness of the two bus transportation businesses, as we have held, plaintiff would be entitled to recover if the proofs were sufficient to show that the bus involved in the collision was at the time being operated under or pursuant to Quivira Bus Line's certificate of convenience and necessity or permit. For example, had the collision occurred when the Argentine bus was actually beng used in the transportation of a passenger or passengers transferred, or to be transferred, from it to the Quivira bus, or vice versa, then it would seem to be perfectly clear that such bus would be deemed to have been operating at the time in the business or service authorized by Quivira's certificate or permit—or, in the language of the endorsement, "pursuant to the certificate or permit," and hence within the coverage as extended. But, of course, here we are not dealing with that type of fact situation. The facts and circumstances surrounding the operation in which the bus was engaged at the time of the collision have been set forth above as fully and completely as they appear in the record, and will not be restated at this juncture. In short, it may be said that not only does the evidence fail to show that the bus was being operated pursuant to Quivira's certificate or permit, but that on the contrary it affirmatively appears (from the deposition of Chowning, hereinabove excerpted—and which was offered by plaintiff, who thereby vouched for said deponent's credibility—and that of Fanning, the driver) that the bus involved in the collision was not engaged in any operation whatever of the Quivira Bus Line, either under (or pursuant to) any certificate or permit issued by the Interstate Commerce Commission or by the Kansas Cor-

poration Commission, or otherwise. There being no countervailing proof on this vital aspect of the case, the judgment of the trial court was not erroneous, and should be, and it is, affirmed.

All concur.