**Ex Parte Mirlo Luana GONZALES, Applicant.**

No. 72,606.

Court of Criminal Appeals of Texas, En Banc.

May 12, 1997.

*OPINION*

Phil Robertson, Clifton, for appellant.

Martin L. Peterson, Hamilton, Matthew Paul, State's Atty., Austin, for the state.

HOLLAND, Judge.

In this original application for writ of habeas corpus, applicant contends she is illegally restrained by an order of contempt in the 220th District Court of Bosque County. Applicant asserts that (1) her restraint violates TEX. CONST. art. I, § 18, and various other statutes, because she is being imprisoned for failure to pay a debt; and (2) she was deprived of counsel at the hearing in which the trial judge found her in contempt of court and sentenced her to ninety days in the Bosque County Jail.

Applicant was convicted of burglary of a habitation and sentenced to five years confinement, probated, and a $3,000 fine. After the trial judge announced her sentence, applicant indicated her desire to appeal and requested a court-appointed attorney. The judge conducted a hearing on applicant's indigency. Applicant testified she did not have any dependents and that she was living with her fiancé. She worked two or three days a week installing sheet rock and rode to work with a neighbor. Applicant stated that looking for a different job with a steady income was difficult because she did not have adequate transportation. Applicant was in the process of repaying her father for money he posted on her trial bond and retaining her trial attorney. Additionally, applicant still owed her trial attorney $1,400. Applicant maintained she could not afford to pay for a statement of facts or hire an attorney for purposes of an appeal.

The trial judge asked applicant how much money she could "come up with on a monthly basis" to which applicant responded, "[p]robably about fifty a week." The trial court made a "limited finding of indigency in regard to statement of facts and in regard to appointed—or in regard to counsel on appeal."[1] The judge appointed applicant appellate counsel and ordered the court reporter to prepare a statement of facts. Applicant was ordered to pay $50.00 per week to the

---

1. The judgment reflects a contrary conclusion stating that the "Court found that [applicant] is not indigent. However, due to the limitations of time within which [applicant] must act to perfect her appeal, the Court appointed" an attorney for applicant on appeal.

district clerk for the statement of facts and the attorney on appeal until further order of the court.[2]

A few months later, the State filed a Motion to Show Cause alleging applicant failed to make any of the $50.00 weekly payments ordered by the trial court. Appearing pro se at the hearing on the motion, applicant informed the judge she was employed at Taco Bell working eight hours a day, six days a week. She was living by herself and paying rent on a house her father vacated. Applicant was still without transportation and rode to work each day with a neighbor. The judge told applicant

> [y]ou better be making these payments, Ms. Gonzales, or you are not going to like what happens. And I am going to tell you, you are going to need to have an attorney representing you if you don't tend to business. . . . Otherwise you may be going to jail.

The trial judge continued the hearing for three weeks to see what kind of progress applicant made on the payments.

When the hearing resumed, applicant, again appearing pro se, still had not made a payment. The trial judge stated

> I believe I had previously admonished you about retaining an attorney and told you that I did not find that you were indigent so I would [sic] appoint you an attorney.

> * * *

> I don't find you are in a situation where you're indigent as I determine that to be, so I'm not going to appoint you an attorney.

The State produced evidence of applicant's failure to make any of the $50.00 payments.[3]

2. This payment was not a condition of applicant's probation.

3. There was evidence that applicant made one $50.00 payment, however, it was made outside the dates alleged at the hearing.

4. Tex.Const. art. I, § 18 provides
 No person shall ever be imprisoned for debt.
 While applicant phrases his argument in an "imprisonment for debt" context, he is really making an Equal Protection claim. These con-

The record of the hearing demonstrates that applicant did not understand the proceeding and repeatedly asked the judge for explanations. Applicant did not put on any evidence nor did she argue in her own behalf. The judge held applicant in contempt and sentenced her to ninety days in jail. The judge provided that applicant's sentence would be suspended after thirty days if applicant paid Bosque County $750.00, the amount past due on her court ordered payments.

### I.

In her first ground for review, applicant claims that her confinement resulting from her failure to make the court ordered weekly payments amounts to her being imprisoned for failure to pay a debt in violation of Tex. Const. art. I, § 18.[4] She notes this Court's opinion in *Curry v. Wilson*, 853 S.W.2d 40 (Tex.Crim.App.1993) provides some background on the issue.

### A.

The defendant in *Curry* was appointed counsel for his criminal trial. After the defendant was acquitted, the trial court notified the defendant that it was aware he had the resources to pay for his representation, and that pursuant to Tex.Code Crim.Proc.Ann. Art. 26.05(e), he would be required to repay the costs of the legal services provided by the county. In a writ of prohibition to this Court the defendant claimed art. 26.05(e), the Texas recoupment statute, violated the Due Process and Equal Protection provisions of the Texas and Federal Constitutions. We held art. 26.05(e) did not violate Due Process or Equal Protection in the manner argued by the defendant.

The issue in the instant case, which was left open in *Curry*, is whether a defendant

cepts are interrelated. We have said that art. I, § 18 is inapplicable to criminal proceedings:
> In general, the liability to pay money growing out of contract constitutes a debt within the meaning of the constitutional guaranty. . . . Hence the phrase imprisonment for debt has no application to criminal proceedings, nor to imprisonment meted out as a punishment for violation of the laws and for a refusal to submit to the penalty imposed.

*Ex parte Robertson*, 27 Tex.App. 628, 11 S.W. 669 (1889); *Dixon v. State*, 2 Tex. 481 (1847).

can be held in contempt and confined for violating an order made pursuant to art. 26.05(e). Tex.Code Crim.Proc.Ann. art. 26.05(e) states

> [i]f the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay the amount that it finds the defendant is able to pay.

While art. 26.05 provides for the recoupment of legal fees, it does not set forth the procedure by which to do so, nor the consequences resulting from a failure to make such payments.

Rather than contempt proceedings, applicant argues that the trial court should have utilized the procedures for collection of fees and expenses set forth in Tex.Code Crim. Proc.Ann. arts. 42.12 and 43.03. Article 42.12 requires that prior to making payment of fines, costs, restitution, or reimbursement for court appointed counsel a condition of probation, the trial court "consider" a probationer's ability to make such payments ordered by the court. Tex.Code Crim.Proc. Ann. art. 42.12, § 11(b); *Pennington v. State,* 902 S.W.2d 752, 754 (Tex.App.—Fort Worth 1995, pet. ref'd). Article 43.03 provides that if a defendant sentenced to pay a fine or costs defaults in payment, the court may not order the defendant confined unless the court

> (1) determines that the defendant is not indigent or determines that the defendant wilfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay ....; and
>
> (2) determines that no alternative method discharging fines and costs ... is appropriate for the defendant.

Tex.Code Crim.Proc.Ann. art. 43.03(d). Applicant claims the trial court's action in attempting to collect payments outside the guidelines of arts. 42.12 and 43.03 resulted in the type of Equal Protection violation the United States Supreme Court discussed in *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970) and *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).

In *Williams,* the Court held that a State may not keep a defendant incarcerated beyond the maximum period of confinement authorized by statute on the basis that the defendant is unable to pay the fine imposed as part of his sentence. In *Tate,* the Supreme Court held that the defendant could not be imprisoned for failure to pay a fine imposed for violating a "fine only" statute due to his indigent status. *Tate,* 401 U.S. at 397–98, 91 S.Ct. at 670–71. The Court found equal protection violations in *Williams* and *Tate* because the defendants suffered confinement solely due to their financial inability to pay a fine whereas those defendants with access to funds could avoid imprisonment.

Applicant does not explain how the equal protection violations the Court found in *Williams* and *Tate* apply to this case or how following the procedures outlined in arts. 42.12 and 43.03 would prevent such violations from occurring here. We note that neither art. 42.12 nor art. 43.03 directly applies to applicant because the trial court's judgment is being appealed. As such, the court was not obligated to order payments according to the guidelines of arts. 42.12 and 43.03. As best we can ascertain, applicant's argument is that following the procedures in arts. 42.12 and 43.03 cited above before a trial court finds a defendant in contempt and orders him confined for failure to make payments pursuant to art. 26.05(e) would safeguard against an Equal Protection violation arising from a defendant's confinement based solely on his indigent status. To an extent, we agree.

It would be illogical for a trial court to appoint a defendant counsel and then find the defendant in contempt and sentence him to prison for failure to reimburse the county for the expense of his defense without first considering his ability to make payments. This is true even if a trial court appoints counsel for a non-indigent defendant due to time constraints, as occurred in the instant case. Article 26.05 mandates as much, proving that "the court shall order the defendant to pay the amount that *it finds the defendant is able to pay.*" If the court ignores the defendant's ability to make payments, whether the payments are a condition of probation

or for the costs of one's legal defense, it is possible that a defendant may be imprisoned solely due to his indigent status. Language in both *Williams* and *Tate* suggests there is a distinction between a defendant who fails to make payments solely due to his indigent status and a defendant who has the funds to make payments, but refuses to do so. *See Williams,* 399 U.S. at 242 n. 19, 90 S.Ct. at 2023 n. 19 (stating that "nothing in our decision today precludes imprisonment for *willful refusal* to pay a fine or court costs"); *Tate,* 401 U.S. at 400, 91 S.Ct. at 672 (emphasizing its holding did not "suggest any constitutional infirmity in imprisonment of a defendant *with the means to pay a fine who refuses or neglects to do so* ") (emphasis added). In the first case, a court is not likely to find an equal protection violation. The requirement of article 26.05(e), as well as that of 42.12 and 43.03, that the trial court take into consideration a defendant's ability to make payments recognizes the importance of this distinction.

### B.

Another case we can look to for guidance is *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974). In *Fuller,* the Supreme Court upheld the validity of an Oregon recoupment statute which required that several conditions be satisfied before a defendant could be required to repay the costs of his legal defense, including the provision that "[t]he court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them." *Id.* at 43 n. 5, 94 S.Ct. at 2120 n. 5. The Oregon statute also provided that an individual could be held in contempt for failure to repay unless he showed that "his default was not attributable to an *intentional refusal to obey the order of the court or to a failure on his part to make a good faith effort to make the payment* . . . ." *Id.* at 46, 94 S.Ct. at 2121 (emphasis added). The statute contained the type of constitutional safeguard suggested in *Williams* and *Tate,* that is, imprisonment for failure to satisfy a monetary obligation should be based upon a defendant's refusal to pay rather than a defendant's mere financial inability to pay. *See id.* (noting "[d]efendants with no likelihood of having the means

to repay are not put under even a conditional obligation to do so, and those upon whom a conditional obligation is imposed are not subjected to collection procedures until their indigency has ended and no 'manifest hardship' will result").

We find instructive the fact that the *Fuller* Court upheld the validity of a recoupment statute specifically allowing for enforcement through contempt. Although noting the defendant did not raise an "imprisonment for debt" issue, the Court nonetheless stated that the Oregon recoupment statute was "not a collection device used by the State to enforce debts to it, but [ ] a sanction imposed for 'an intentional refusal to obey the order of the court.' " *Id.* at 48 n. 9, 94 S.Ct. at 2122 n. 9.

We agree that finding a defendant in contempt and ordering him confined pursuant to a recoupment statute should not operate as a means to collect a debt, but rather as a method by which to enforce a court order. Our recoupment statute should operate in the same manner. Accordingly, we hold that, at a minimum, a trial court may not order a defendant confined for failure to repay the costs of his legal defense pursuant to art. 26.05(e) unless the court considers the defendant's ability to make the payment. The trial court's power to order reimbursement should be limited to the extent a defendant is reasonably able to do so. *See* art. 26.05(e) (stating "the court shall order the defendant to pay the amount that it finds the defendant is able to pay"). If that requirement is followed, there is no reason a defendant could not be held in contempt and confined for failure to satisfy a court's order under art. 26.05. The next logical step in our analysis of this case would be to apply this rule to the facts here and decide if the trial court considered applicant's ability to reimburse the county. However, due to our disposition of applicant's second ground for review, we need not make that determination.

### II.

In his second ground for review applicant claims the trial court's failure to advise her of her right to counsel at the contempt hearing

deprived her of due process under U.S. CONST. amend. VI and XIV, due course of law under TEX. CONST. art. I, § 10, and the right to effective assistance of counsel as guaranteed by both constitutions and Tex. Code Crim.Proc.Ann. art. 1.051. We agree.

### A.

The right to counsel is fundamental and essential to a fair trial. *See Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963). The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. CONST. amend. VI. It is well settled that the Sixth Amendment right to counsel is not forfeitable, but may only be waived by the conscious and intelligent decision of the person who holds the right. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The Texas constitution also specifically guarantees the assistance of counsel. TEX. CONST. art. I, § 10. The Texas Legislature has taken steps to ensure this constitutional mandate by enacting a statutory right to representation in criminal proceedings.[5]

We have not found any case from this Court addressing an individual's right to counsel at a contempt hearing. However, other courts have considered this issue in the context of a contempt hearing resulting from failure to pay child support. Although the cases are not binding authority on this Court, we find the decisions helpful to the resolution of the instant case.

In *Ex parte Goodman,* 742 S.W.2d 536 (Tex.App.—Ft. Worth 1987, orig. proceeding), relator was found in contempt for fail-

ure to pay child support and sentenced to 120 days in jail.[6] Relator challenged the validity of the contempt hearing because he was not afforded assistance of counsel and the record did not show he waived such right. *Goodman,* 742 S.W.2d at 539. The court of appeals stated

> [i]t is settled law in this State that when an indigent is charged with contempt, is not represented by counsel and has not intelligently waived the right to assistance of counsel, a court may not, without violating the constitutional right to assistance of counsel, impose imprisonment as a punishment for disobedience of a child support order.

*Id.* (citations omitted). Quoting the Texas Supreme Court, the court of appeals noted "[c]ontempt proceedings are generally criminal in their nature whether they grow out of criminal or civil actions." *Id.* at 540. In view of this, the court stated, "we find it inescapable that the right to counsel afforded to those accused of a crime by the provisions of the Texas Code of Criminal Procedure apply equally to alleged constructive criminal contemnors." The criminal code provisions the court cited, which included art. 1.051, all address a defendant's right to counsel and right to appointment of counsel if indigent. *See* Tex.Code Crim.Proc.Ann. art. 1.051 ("A defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial proceeding"); art. 15.17 ("The magistrate shall inform in clear language the person arrested ... of his right to have an attorney present, ..., of his right to request the appointment of counsel if he is indigent and cannot afford counsel ..."); art. 26.04 ("Whenever the court determines ... that an accused charged with a felony or

---

**5.** Tex.Code Crim.Proc.Ann. art. 1.051 provides in pertinent part

(a) A defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial proceeding....

\* \* \*

(c) An indigent defendant is entitled to have an attorney appointed to represent him in any adversary judicial proceeding that may result in punishment by confinement....

**6.** The procedural history of *Goodman* is as follows: At the contempt hearing, relator was sen-

tenced to 144 days in jail, to be suspended after serving 24 days, during a 48 month period of probation. Subsequently, relator's ex-wife filed a Motion to Revoke Probation alleging relator failed to make the child support payments due. At the hearing on the motion, the court found relator failed to comply with the order suspending his commitment by failing to make the payments due and was committed to custody to serve 120 days unless he tendered payment of $6,643.80, the child support past due.

a misdemeanor punishable by imprisonment is too poor to employ counsel, the court shall appoint one ...."). The court held "the appearance without counsel of an alleged constructive contemnor at a contempt hearing requires the court to advise the alleged contemnor of his right to be represented by counsel and his right to request the appointment of counsel if he is indigent and cannot afford counsel."

■ We agree with the court of appeals' reasoning in *Goodman.* Like our sister court, we recognize that contempt proceedings are quasi-criminal in nature. *See Ex parte Cardwell,* 416 S.W.2d 382, 384 (Tex. 1967). Accordingly, proceedings in contempt cases should conform as nearly as practicable to those in criminal cases. *See Ex parte Sanchez,* 703 S.W.2d 955, 957 (Tex.1986); *Deramus v. Thornton,* 160 Tex. 494, 333 S.W.2d 824, 829 (1960). The Code of Criminal Procedure emphasizes the right to counsel in criminal cases, and as the *Goodman* court asserted, that right to counsel should similarly extend to criminal contemnors.

■ We also note that "[t]he right to counsel turns on whether deprivation of liberty may result from a proceeding, not upon its characterization as 'criminal' or 'civil.'" *Ex parte Strickland,* 724 S.W.2d 132, 134 (Tex.App.—Eastland 1987, orig. proceeding) (quoting *Ridgway v. Baker,* 720 F.2d 1409 (5th Cir.1983)). "[N]o person may be deprived of his liberty who has been denied the assistance of counsel...." *Argersinger v. Hamlin,* 407 U.S. 25, 37–38, 92 S.Ct. 2006, 2013, 32 L.Ed.2d 530 (1972). Contemnors are entitled to procedural due process protections before they may be held in contempt; this is especially true when the results of a contempt proceeding may lead to incarceration. *Cf. Ex parte Keene,* 909 S.W.2d 507, 507–08 (Tex.1995) (holding contemnor unlawfully confined because trial court did not advise him of his right to counsel or of his right to appointed counsel in violation of Family Code § 14.32(f) which provides that if incarceration is possible result of contempt proceedings, "the court shall inform a respondent who is not represented by an attorney of his right to be represented and his right to the appointment of an attorney if he is indigent"). We note that several federal circuits addressing this issue have held that a defendant in a contempt proceeding who faces imprisonment as a result of the proceeding is entitled to representation. *See, e.g., United States v. Anderson,* 553 F.2d 1154, 1155 (8th Cir.1977) (stating due process requires right to counsel be extended to contempt proceeding where defendant may be imprisoned); *In re Di Bella,* 518 F.2d 955, 959 (2nd Cir.1975) (holding defendant entitled to counsel in civil contempt proceeding where defendant faced with prospect of imprisonment); *see also United States v. Bobart Travel Agency, Inc.,* 699 F.2d 618, 620 (2nd Cir.1983) (recognizing "contempt is an area of the law in which counsel's advice is often indispensable"); *Brooks v. United States,* 686 A.2d 214, 233 (D.C.App.1996) (Ruiz, J., concurring) (due process requires assistance of counsel in contempt proceedings that result in incarceration); *Wisconsin v. Pultz,* 206 Wis.2d 111, 556 N.W.2d 708, 717 (1996) (trial court must advise pro se defendant in contempt proceeding which might result in incarceration that he is entitled to be represented by an attorney, and if found indigent, entitled to appointment of counsel).

■ For the foregoing reasons, we hold that a contemnor is entitled to representation, either by retained or appointed counsel, in a contempt proceeding.

■ Turning to the instant case, we note that applicant was held in contempt and sentenced to ninety days in jail. It is clear that the result of this contempt action for failure to make the court ordered payments is a deprivation of applicant's liberty. Based upon this fact, coupled with our view that the Code of Criminal Procedure provisions entitling a defendant to representation should apply to criminal contemnors, we find applicant had a right to be represented by counsel at the contempt proceeding.

### B.

■ Having found that applicant was entitled to representation, we must now determine whether applicant was informed of this right. We find that the trial court had the duty to assure that applicant was aware of

her right to retain an attorney or to be appointed counsel if the court determined she was indigent. "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of the trial court, in which the accused—whose life or liberty is at stake—is without counsel." *Zerbst*, 304 U.S. at 465, 58 S.Ct. at 1023. This Court has held "the appearance of a criminal defendant in court without counsel [ ] necessitates an examination by the trial judge" as to whether the defendant is aware of his right to representation. *Oliver v. State*, 872 S.W.2d 713, 716 (Tex.Crim.App. 1994).

The State argues the record reflects applicant was admonished of her right to counsel. First, the States claims she was informed of this right prior to the hearing when the judge stated "[a]nd I am going to tell you, you are going to need to have an attorney representing you if you don't tend to business." However, we do not find that statement can be interpreted to convey to applicant her right to representation or appointment of counsel at the contempt proceeding. The State also points to a place in the statement of facts where the trial court stated "I believe I had previously admonished you about retaining an attorney and told you that I did not find that you were indigent so I would [sic] appoint you an attorney." Although the judge claimed to have admonished applicant of her right to counsel, after a thorough search of the record, we cannot find any such admonishment. Finally, the State notes applicant announced she was ready to proceed with the contempt hearing. From the record, however, it is obvious that applicant did not understand the contempt proceedings. She did not understand the words "contempt," "indigent," and "cumulation," nor the concept that she could not be forced to testify at the contempt hearing. That applicant stated she was ready to proceed does not in any way detract from either her right to representation or the trial court's obligation to inform her of that right.

 There is nothing in the record to suggest applicant intended to waive her right to counsel. "[I]t is essential that no criminal defendant be subjected to formal adversarial judicial proceedings without a lawyer unless there is a basis for concluding that he knowingly, voluntarily, and intelligently relinquished or abandoned his right to the assistance of counsel." *Id.* at 715 (citing *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). Because applicant was not notified of her right to counsel at the contempt hearing, we cannot conclude her pronouncement that she was ready to proceed amounted to an abandonment of her right to representation. *Cf. Oliver*, 872 S.W.2d at 716 ("[I]t is apparent from the settled case law of this Court and the United States Supreme Court that failure to request counsel does not amount to the voluntary relinquishment or abandonment of a *known* right, ...").

 The State correctly asserts that applicant was not entitled to have an attorney appointed to represent her until such time as the court determined that she was indigent. Regardless of applicant's financial resources, however, she was entitled to know that she had a right to representation at the contempt hearing. A defendant—indigent or otherwise—is entitled to be represented by counsel in a criminal matter. Tex.Code Crim. Proc.Ann. art. 1.051(a), (c); *Johnson v. State*, 894 S.W.2d 529, 532 (Tex.App.—Austin 1995, no pet.). The error here was the fact that the trial court failed to *inform* applicant of this right.

 Trial judges presiding over contempt proceedings should recognize that under the rule we announce today, a defendant must be informed of his right to representation, and if found indigent, his right to appointment of counsel.

We grant applicant's writ of habeas corpus and order that she be released based upon our finding that her conviction for contempt and the incarceration arising out of that conviction are void for the reason which we have stated.

BAIRD, Judge, concurring and dissenting.

Applicant contends she is illegally restrained by an order of contempt in the 220th District Court of Bosque County. Specifical-

ly, she contends: 1) her restraint violates Tex. Const. art. I, § 18, and various statutes, because she is being imprisoned for the failure to pay a debt; and, 2) she was deprived of counsel at the contempt hearing.

I agree with the majority that applicant had a right to be represented by counsel at the contempt proceeding. *Ante*, at 836. Additionally, I agree with the majority that the trial judge failed to inform applicant of this right. *Ante*, at 837. Therefore, I join part II of the majority opinion. However, for the following reasons I dissent to part I of the majority opinion because I do not believe the trial judge is presently authorized to order recoupment

Tex.Code Crim.Proc.Ann. art. 26.05(e) which provides:

> If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services *provided*, including any expenses and costs, the court shall order the defendant to pay the amount that it finds the defendant is able to pay.[1]

In *Curry v. Wilson*, 853 S.W.2d 40 (Tex. Cr.App.1993), we considered whether a trial judge may seek recoupment of monies *expended* for the legal representation of an indigent. Curry was charged with involuntary manslaughter, and received appointed counsel. *Following* his acquittal, Curry was ordered to pay for his representation and a payment plan was established for recoupment. *Id.*, 853 S.W.2d at 42–43. We granted review to determine whether a trial judge could order recoupment of monies *expended* on behalf of a defendant who had been acquitted. *Id.*, 853 S.W.2d at 44. We held article 26.05(e) authorized the trial judge "to order *repayment* of the county funds *expended* for applicant's appointed legal defense by virtue of [the judge's] determination that applicant was financially able to offset those costs." *Curry*, 853 S.W.2d at 45.

Even though the trial judge had issued a *capias pro finum*, the warrant was withdrawn and we did *not* address whether Curry was illegally restrained for failure to make payments as per the recoupment order. *Id.*,

853 S.W.2d at 43. Therefore, the question we did not reach in *Curry* is expressly presented in the instant case: Is applicant illegally restrained?

Under the plain language of the art. 26.05(e), recoupment is authorized only for "legal services *provided*." The costs of the legal services provided are not known until the criminal matter becomes final. In cases such as *Curry v. Wilson*, the matter is final when the defendant is acquitted or the prosecution is otherwise terminated. However, when the trial level prosecution ends in a conviction and sentence, the matter may be far from over. In such cases the defendant may file a motion for new trial. In such an event, the matter will not be final until the motion was granted, denied or overruled by operation of law. And, in the latter instances, the defendant may pursue an appeal. These legal services will normally include preparation of a statement of facts, a brief on behalf of the appellant and perhaps a motion for rehearing. Additional legal services may be required if either the State or the appellant seeks discretionary review. And, if such review if granted, the parties will again be required to file briefs and perhaps travel to Austin to present oral argument. Finally, upon our decision, legal services may be required to either file or respond to a motion for rehearing.

Because, the costs of the legal services provided in a criminal matter are subject to any number of variables, they are undeterminable until the criminal matter becomes final. Therefore, I would use this case to establish the following bright-line rule regarding recoupment:

1. If the trial level prosecution ends with an acquittal or is otherwise terminated, recoupment is authorized and may begin immediately;

2. If the trial level prosecution ends with a conviction and sentence, and the defendant opts not to appeal, recoupment is authorized and may begin at the time the time for the filing of a motion for new trial or giving notice of appeal has expired;

---

1. All emphasis is supplied unless otherwise indicated.

3. If the trial level prosecution ends with a conviction and sentence, and the defendant opts to appeal, recoupment is authorized but may not begin until the mandate of affirmance has issued; or,

4. If the trial level prosecution ends with a conviction and sentence and the trial judge grants a new trial, or the case is appealed and the appeal results in an acquittal or reversal of some phase of the trial level prosecution, recoupment is not authorized until the occurrence of either 1, 2, or 3.[2]

The instant criminal matter is not final because none of these events have occurred. Therefore, the trial judge is not authorized to order recoupment. Consequently, applicant is illegally restrained.

With these comments, I respectfully dissent to part I of the majority opinion.

OVERSTREET, MANSFIELD and PRICE, JJ., join this opinion.

KELLER, Judge, concurring and dissenting.

I agree that a defendant may be held in contempt and confined for violating an order made pursuant to art. 26.05(e). I also agree that a contemnor is entitled to legal representation in a contempt proceeding. But I do not agree with the majority's conclusion that applicant is entitled to relief from the order of contempt in this case.

The majority determines that applicant is entitled to relief because she was not informed of her right to have counsel at the hearing. First, that is not the basis of applicant's claim. In her Amended Petition for Writ of Habeas Corpus, she alleges that the trial court's failure to *appoint* counsel violated her rights under various constitutional and statutory provisions. She does not claim that the court failed to inform her that she had a right to counsel. Since the majority, as I understand it, accepts the trial court's finding that applicant was not indigent, applicant's claim should fail—the court was not required to appoint counsel to a non-indigent.

Second, as applicant concedes in her Amended Petition, the trial court "insisted that the Applicant hire a lawyer." The judge told applicant that if she did not make her payments, she would need a lawyer. He asked her if she understood that and she replied, "Yes." This is the admonishment to which the judge later referred when he told her that he was not going to appoint an attorney because she was not indigent. Though applicant was not told in so many words that she had a right to counsel, the judge's comments put applicant on notice that she needed an attorney. It seems to me that such a statement necessarily informed her that she had a right to counsel. And, again, applicant does not argue that the court failed to inform her of the right to counsel.

In short, the majority grants relief on the basis of a claim not made by applicant. And, even if she had claimed that the court failed to inform her of her right to counsel, applicant would not be entitled to relief. I therefore join Parts I and IIA of the majority opinion but, with respect, I dissent to Part IIB.

---

**2.** Additionally, I would hold that in cases under 2 or 3 the better method of obtaining recoupment is either Tex.Code Crim.Proc.Ann. art. 42.12, § 11(a)(8) or 43.03.