**Ex parte Willie Ray KING.**

**No. 54340.**

Court of Criminal Appeals of Texas.

May 18, 1977.

Stanley G. Schneider, Huntsville, for appellant.

Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

In this habeas corpus proceeding, King seeks to set aside his conviction for felony theft in Cause No. 1750 in the 154th Judicial District Court of Lamb County where the punishment was assessed at four years.

After the hearing, the Judge of that court found that on February 23, 1976 King was without counsel during the trial of such cause. However, he found that King was not indigent and that he had voluntarily, knowingly and intelligently waived his right to be represented by counsel.

On January 9, 1976 King appeared before the Judge in the cause and the following transpired:

"THE COURT: Mr. King, I need to talk to you now. Come on up.

I haven't heard from a lawyer on your case. Who do you have hired?

WILLIE RAY KING: Sir?

"THE COURT: What lawyer do you have hired?

"WILLIE RAY KING: I don't have one.

"THE COURT: Well, do you want to go to trial without a lawyer? Is that what you want?

"WILLIE RAY KING: Well, I don't know.

"THE COURT: Sir?

"WILLIE RAY KING: I tried to call my brother in Dallas to get him to send me some money, but I never could get him.

"THE COURT: Well, your case is set for February the 2nd. I am not going to put it off again.

You are out on bond; you ought to be able to work and hire you a lawyer.

"WILLIE RAY KING: Yes.

"THE COURT: Are you working now?

"WILLIE RAY KING: I have been part of the time when it is warm.

"THE COURT: There is nothing to do?

"WILLIE RAY KING: Well, no.

"THE COURT: You can't get a construction job out at the American Cotton Products Plant out there?

"WILLIE RAY KING: I don't know.

"THE COURT: Sir?

"WILLIE RAY KING: I haven't been out there.

"THE COURT: Can you work as a farm hand?

"WILLIE RAY KING: Yes, sir.

"THE COURT: Can you handle tractors?

"WILLIE RAY KING: Sir?

"THE COURT: Can you handle tractors, operate tractors?

"WILLIE RAY KING: Yes, sir.

"THE COURT: Aren't there farmers hiring now to do that kind of work?

"WILLIE RAY KING: Yes, sir, they are hiring, but not when the weather is bad.

"THE COURT: Well, is the weather bad today?

"WILLIE RAY KING: No, sir, not today.

"THE COURT: But you are working?

"WILLIE RAY KING: Yes, sir, like I say, when the weather is good.

"THE COURT: Well, you better get your lawyer hired unless you want to go to trial without one.

Be back up here 10:00 A.M. February 2nd; we are going to call your case for trial with or without a lawyer. That is all at this time."

Petitioner's next appearance before the court in the cause was on February 3, 1976, when the following occurred:

"THE COURT: Come up, Mr. King, and have a seat at the counsel table there.

Members of the jury panel, there will be somewhat unusual proceedings here today. We will be trying this case in which Willie Ray King stands charged by indictment.

Mr. King has not employed an attorney to represent him, and I have not seen fit to appoint an attorney to represent him, so he will be representing himself in the trial before the jury here in the District Court.

If you are ready, Mr. Young, (prosecutor), we will proceed to pick a jury to try the case."

After the prosecutor had conducted his voir dire of the jury panel, the following colloquy took place:

"THE COURT: Mr. King, it is your turn now to tell the members of the jury panel anything that you think that the evidence will show in this case that might be favorable to you, or to ask them questions about their background or experiences or attitudes that might affect their service.

"WILLIE RAY KING: I don't have anything to say.

"THE COURT: You don't have anything you want to say to the jury panel at this time?

"WILLIE RAY KING: No, sir."

The court then recessed the jury panel and explained to petitioner the procedure used for selecting a jury, the rule of evidence, the reading of the indictment, and the entry of a plea to the indictment. Following the explanation of the foregoing to petitioner, the court inquired of him whether he would plead guilty or not guilty. King said he would plead "guilty." As to the court's inquiry on whom he wanted to assess punishment, the court or the jury, King replied: "It don't really matter, I don't guess." The court then informed King that he had had sufficient time to find employment and hire counsel, therefore, he would proceed to trial without counsel. The prosecutor prepared a written waiver of jury and stipulation of evidence, explained them to King and had King sign them. The jury panel was discharged and the court admonished King pursuant to Article 26.13, V.A.C.C.P. The State put on evidence of a prior conviction at the punishment stage. King did not present any evidence.

On December 27, 1976, an evidentiary hearing was held on King's petition. The evidence adduced at that hearing showed that Jerrell Haberer had made bond for King following his arrest in late August, 1975. King's brother-in-law, Preysol Hodge, a longtime employee of Haberer had obtained his help. King also worked parttime for Haberer cleaning trailers and digging ditches. Through Johnnie Lee Hodge, King's sister, it was developed that King had lived with her and her husband. Prior to going to prison he was a farm worker who did odd jobs and was out of work whenever the weather was bad. She said that her brother had little education. King contributed $20–$25 a week toward groceries while living with his sister. Following his arrest his contribution dropped to $5–$10 a week because he had even more difficulty finding employment. The need for counsel was discussed but she and her husband were without funds to assist him and he did not have funds.

Petitioner testified that he did not have an attorney, could not afford an attorney, and was released on bond without having to put up any money. He stated that he had tried to find employment and did work for Curtis Williams for $1.75 per hour. The amount of hours was dependent on the weather and availability of equipment. Williams, called by the State, verified King's testimony and said the most King would make in a month would be $300.00. King testified that he had gone through the seventh grade in school and had no vocational training.

As to the trial itself, King admitted that he really didn't want a jury trial because " . . . what I was trying to get around was facing you [prosecutor] before these twelve jurors. That is what I was trying to get around, because I knew I didn't have no chance, 'period', no kind of chance." He testified that he had no knowledge of the law nor of his right to appeal and that the only thing he understood of his trial was that " . . . I was going to the penitentiary."

The evidence also showed that King had difficulty reading and that he was an illiterate with an IQ of 80. Cuyler G. Thompson, Assistant Principal of Windham School District, Walls Unit, testified that King was classified as an illiterate and had barely achieved a second grade understanding of such basic educational skills as reading, writing and arithmetic. Roy H. Wilson, manager of the Texas Employment Com-

mission office in Littlefield, testified that while there were many jobs in the area during the period from September, 1975 through February, 1976, he had placed King only on seasonal or spot jobs. King had been in his office on numerous occasions, but he had classified him as a seasonal farm worker who had no skills. Wilson stated that it would be very difficult for a person with an IQ of 80 and who could not read or write to obtain a good paying job.

There is evidence that King attempted to locate an older brother in Dallas to obtain funds to hire counsel.

From the record before us it appears that he did not have funds to pay for his own attorney to represent him in the trial.

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions an accused shall have the assistance of counsel for his defense. Article 1, Section 10, Texas Constitution, also provides that an accused shall have the right to counsel.

The record does not show that there was a hearing on indigency prior to the trial. We are unable to conclude that because King was free on bond and making at times $70.00 a week warranted the trial court in refusing to appoint counsel.

Article 26.04(a), V.A.C.C.P., provides:

"Whenever the court determines at an arraignment or at any time prior to arraignment that an accused charged with a felony or a misdemeanor punishable by imprisonment is too poor to employ counsel, the court shall appoint one or more practicing attorneys to defend him. In making the determination, the court shall require the accused to file an affidavit, and may call witnesses and hear any relevant testimony or other evidence."

Brothers are not legally bound to pay for the expenses of an accused in hiring counsel. Even though they assist him in putting up a bond for his appearance, further obligation is not incurred. Even though such relatives of an accused have money, this does not mean a defendant is not indigent.

Cf. *Conrad v. State*, 537 S.W.2d 755 (Tex.Cr. App.1976).

In *Conrad*, we noted that even though there had been retained counsel at the trial this did not bind counsel to furnish a record at his own expense or to handle the appeal without a fee. The question of indigency for appeal purposes is to be determined at the time of the appeal and not at the time of the trial. *Barber v. State*, 542 S.W.2d 412 (Tex.Cr.App.1976). Likewise, a determination must be made pursuant to Article 26.04, supra, before the trial itself even though an accused is free on bail.

There are no standards set out for the guidance of trial judges in determining the actual indigency of a defendant for purposes of a trial. Each case must be decided upon its facts. Such a determination cannot be made without a hearing on the question of indigency. Petitioner had informed the court that he was without funds to hire counsel. The record before us supports his contention.

The failure to appoint counsel violated his Fourteenth and Sixth Amendment rights under the United States Constitution and his rights under the Texas Constitution. See *Ex parte Coleman*, 455 S.W.2d 209 (Tex.Cr.App.1970), and *Williams v. State*, 461 S.W.2d 630 (Tex.Cr.App.1971).

We cannot conclude that petitioner made a voluntary, knowing and intelligent waiver of counsel when he failed to follow the trial court's instructions to obtain counsel or proceed to trial without counsel. This petitioner was an illiterate as shown at the hearing both by witnesses called in his behalf and by the State. He had at the time of the trial limited, if any, ability to read and write. The record shows that he was unaware and did not understand the proceedings. A defendant may waive his right to counsel if such waiver is made voluntarily and knowingly of the consequences thereof. In *Parker v. State*, 545 S.W.2d 151 (Tex.Cr.App.1977), this Court wrote:

"Waiver may be defined as 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v.*

*Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). A waiver of the right to counsel will not be presumed from a silent record. *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962); *Ex parte Auten,* 458 S.W.2d 466 (Tex.Cr.App.1975); *Bray v. State,* 531 S.W.2d 633 (Tex.Cr.App.1976). A waiver will not be 'lightly inferred,' and courts will indulge every reasonable presumption against the waiver of fundamental constitutional rights. *Johnson v. Zerbst,* supra. And a heavy burden rests upon the prosecution to demonstrate an intelligent, voluntary and knowing waiver of constitutional rights, particularly as applied to the right to retained or appointed counsel. *Ex parte Bird,* 457 S.W.2d 559 (Tex.Cr.App.1970).

"In *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the United States Supreme Court wrote:

"'We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.'"

■ We cannot conclude from the record before us that the appellant made a knowing, intelligent and voluntary waiver of his right to counsel even if he had not been indigent. See *Parker v. State,* supra; *Ex parte Herrin,* 537 S.W.2d 33 (Tex.Cr.App. 1976); and *Baker v. State,* 519 S.W.2d 648 (Tex.Cr.App.1975).

Petitioner is ordered returned to the Sheriff of Lamb County to answer the indictment in this cause.