Thomas Henderson
**COURTNEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 85 173 CR.**

Court of Appeals of Texas,
Beaumont.

May 7, 1986.

Ken J. McLean, Houston, for appellant.

Mary F. Klapperich, Asst. Dist. Atty., Conroe, for appellee.

OPINION

PER CURIAM.

Thomas Henderson Courtney was convicted by a jury of Burglary of a Habitation. The court assessed his punishment at twenty years confinement in the Texas Department of Corrections. Appellant gave notice of appeal, filed an indigency affidavit, asked the trial court to provide him a transcription of the court reporter's notes. After a hearing, the trial court ruled the appellant was not indigent. Appellant then gave notice that he desired to appeal the issue of indigency and requested a free record of the indigency hearing. The trial court refused. This court, in an unpublished opinion dated November 14, 1985, abated the appeal and directed the

---

trial court to furnish appellant a transcription of the indigency hearing. We now have the record of the indigency hearing before us. A single ground of error alleges the trial court erred in refusing appellant's request for a transcript. Simply put the question is, did appellant prove he was indigent.

■■■ A determination of indigence must be made on a case by case basis. *Zanghetti v. State,* 582 S.W.2d 461 (Tex. Crim.App.1979). The determination is to be made at the time of the appeal and not at the time of trial. *Barber v. State,* 542 S.W.2d 412 (Tex.Crim.App.1976). A determination is to be made of the appellant's financial condition and not that of his parents or other relatives. *Ex Parte King,* 550 S.W.2d 691 (Tex.Crim.App.1977). However, the court may reject an indigency claim when a defendant has transferred assets into relative's names and those assets are at his disposal. *Cardona v. Marshall,* 635 S.W.2d 741 (Tex.Crim.App.1982).

■■ At the time of the indigency hearing, appellant had been in the Texas Department of Corrections almost one month. Appellant testified he had no cash in the bank, no savings accounts or stocks or bonds. He admitted he owned a 1979 Ford Pickup, but owed $2500 on the truck and that in his opinion, he had no equity. Appellant further admitted he had owned a 1977 Pontiac Grand Prix and a 1976 Ford Thunderbird at the time of trial. He stated neither were in running condition and he had transferred the titles to his parents while he was in jail.

Appellant testified he and his father had been in the construction business and they owned tools worth about $5000 but his father was using the tools for work. He further testified that if required to sell his half of the tools, he could only receive 20% of their fair market value. Appellant also testified he had some $40,000 of accounts receivable, but characterized those as "bad debts".

Further, appellant's parents have waived their homestead rights on their home and allowed appellant to mortgage the home to pay for his attorney's fees at trial. None of appellant's contentions as to the condition of his automobiles, the value of the tools or the status of the "bad debts" were contradicted by the state. All in all, appellant's financial position was precarious and doubly so because of his incarceration in the Texas Department of Corrections. Based upon the record before us, we hold the trial court erred in refusing appellant's request for an appellate record. We therefore direct the trial court to furnish appellant a transcription of the court reporter's notes.[1]

---

1. The time for filing the statement of facts and all subsequent appellate steps shall run from the date of this opinion.