Ex parte Lonnie Gordon **GOODMAN.**

No. 2–87–169–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 30, 1987.

Richard Alley, Lee Ann Dauphinot, Tom Cave, Fort Worth, for relator.

Vaughn L. Bailey, Fort Worth, for real party in interest.

Before FENDER, C.J., and JOE SPURLOCK, II and FARRIS, JJ.

## OPINION

FENDER, Chief Justice.

Application was filed in this court seeking habeas corpus relief from incarceration of relator, Lonnie Gordon Goodman, pursuant to commitment issued for contempt of certain orders issued by the judge of the 325th District Court of Tarrant County in connection with the support of relator's children. Relator has alleged denial of due process of law as guaranteed by the United States Constitution; denial of due course of law as guaranteed by the Texas Constitution; denial of the right to effective assistance of counsel as guaranteed by both constitutions; fatal variance between the contemptuous acts alleged and the facts proven; and other legal errors throughout the proceedings.

We grant the relief sought.

In 1980, relator and his then wife were divorced in Tom Green County. Relator was ordered to pay child support in the amount of $300.00 per month. In 1985, a motion to modify was filed by relator's ex-wife. The action was transferred to the 325th District Court of Tarrant County. In March, 1985, relator signed a waiver of citation by which he also agreed that the motion to modify could be amended and considered by the court without further notice to him. Subsequently, the motion was amended and heard on April 25, 1985, in the absence of relator. The child support was ordered increased to $700.00 per month and attorney's fees were awarded. Relator's motion for new trial was denied.

On July 24, 1986, Court Master Enos held a hearing on the ex-wife's motion to establish arrearage and to secure an involuntary wage assignment.

On November 4, 1986, Mrs. Goodman filed a motion for contempt for failure to make the child support payments from August 1, 1986 through November 3, 1986 as well as arrears of $5,064.80. Mrs. Goodman's motion for contempt was heard by Court Master Sean O'Reilly on March 25, 1987, at which time it was recommended that judgment be entered finding relator in contempt for failure to make the payments due in August, 1986, September, 1986, November, 1986 and January, 1987. Punishment of six days in jail for each instance, in the aggregate of 24 days, was assessed. An additional punishment of 30 days for each instance of contempt, a total of 120 days was assessed, but such punishment was ordered suspended after the serving of the 24 days, during a 48–month period of probation. The court master's recommended judgment only as to the 24 days punishment was incorporated in a written Contempt Judgment Ordering Commitment to Jail signed by Judge Brian Carper on March 25, 1987.

On April 10, 1987, Judge Robert L. Wright signed an Order of Release from Jail by which relator was ordered to appear in court on April 13, 1987 "for further processing and review and signature of the probation order of the Court."

On April 13, 1987, Judge Wright signed a Contempt Judgment Ordering Commitment to Jail and Probation. That judgment reiterates the master's findings and punishment and formally ordered relator's 48–

month probation. Recited therein is the following:

> Respondent, LONNIE GOODMAN, appeared in person without the benefit of counsel, and announced ready for trial. The Court proceeded to apprise both parties of the right of appeal of the Master's ruling and further apprised the Respondent, LONNIE GOODMAN, of his 5th Amendment protections under the United State [sic] Constitution. After being fully advised of same, LONNIE GOODMAN waived his 5th Amendment protection and agreed to proceed to trial. The Court then inquired in detail of the Respondent, LONNIE GOODMAN, regarding his status as a possible indigent and finds that Respondent, LONNIE GOODMAN, is not an indigent person.

After finding arrearages to be $6,643.80 and recounting the four instances of contempt, the judgment continues as follows:

> IT IS THEREFORE ORDERED that LONNIE GOODMAN, Respondent in this cause, be sentenced to confinement in the Tarrant County Jail for 6 days on each of the 4 contempt counts recited above, or a total of 24 days to serve with an additional 30 days to serve in confinement in the Tarrant County Jail on each count or a total of 120 days, which time is suspended after Respondent serves the 24 days. The Respondent may purge himself of the contempt by payment of $6,643.80 on the following conditions:
>
> 1. Respondent, LONNIE GOODMAN, shall remain on probation for a period of 48 months beginning in April 1987 and during said probation he shall report in person weekly to his probation officer until he is employed. Thereafter, he shall report monthly while he is employed.
>
> 2. Respondent, LONNIE GOODMAN, shall pay child support by wage assignment at all times for his regular child support payments whenever he is working.
>
> 3. Respondent, LONNIE GOODMAN, shall begin payment of arrearages at the rate of $80.00 per month beginning July 15, 1987, and continuing thereafter at the same amount of $80.00 per month on the 15th day of each month thereafter until all arrears are paid in full. The arrears shall also be paid by wage assignment if not subject to the 50% limitation of disposable earnings.

On June 4, 1987, Mrs. Goodman filed her Motion to Revoke Probation alleging that relator:

> 1. Failed to report to his probation officer during the week of May 18, 1987, while remaining unemployed.
>
> 2. Failed to make the child support payment of $700.00 due on May 1, 1987.

The motion was heard by Judge Wright on July 2, 1987. As a result of that hearing, at which relator appeared without counsel, the court found relator failed to comply with the April 13th order suspending commitment by failing to make the $700.00 payment due on May 1, 1987. Relator was committed to custody to serve 120 days unless he purged himself of the contempt by payment of $6,643.80.

■ In considering the legality of relator's confinement we initially observe that Mrs. Goodman has not responded in any way to urge the propriety of Goodman's incarceration although her attorney of record was given notice of every step in the proceedings taken by this court. The respondent sheriff has presented the writ of commitment delivered to him when he took custody of relator after the July 2nd hearing. Although it is not called to our attention, we find the writ is void, since it is not authorized by the underlying order of commitment. The order requires confinement of 120 days *unless* the arrearages are paid, whereas the writ commands respondent to keep relator for 120 days *and* until he has paid $6,643.80 in arrearages. We could order relator's discharge due to this unassigned fatal error in the proceedings below, but relator, having attacked the validity of the initial contempt proceeding and also the validity of the probation revocation proceeding, is entitled to our present determination of the issues raised in order to forestall a future arrest based upon a corrected writ of commitment.

Relator's challenge to the validity of both hearings is based primarily upon his assertion that he was not afforded assistance of counsel and the record does not show affirmatively that he made a knowing, intelligent and voluntary waiver of counsel.

It is settled law in this State that when an indigent is charged with contempt, is not represented by counsel and has not intelligently waived the right to assistance of counsel, a court may not, without violating the constitutional right to assistance of counsel, impose imprisonment as a punishment for disobedience of a child support order. *See Ex parte Young,* 724 S.W.2d 423, 425 (Tex.App.—Beaumont 1987, no writ) (per curiam); *Ex parte McIntyre,* 730 S.W.2d 411, 415 (Tex.App.—San Antonio 1987, no writ); *Ex parte Lopez,* 710 S.W.2d 948, 951 (Tex.App.—San Antonio 1986, no writ).

The court master who conducted the initial contempt proceeding on March 25, 1987, first required relator to read and fill out a form denominated "Pro Se Respondent Form And Appearance Form" and then made the following observations:

THE COURT: You have stated that you have been advised by the Court and I am informing you that you do have the right to employ an attorney for this matter, you may do so at a later date; that at this time, as you've indicated to me, you are prepared to go forward and you choose to represent yourself at this time; that the above information about your present address, social security number, date of birth is as you have set it out in this form; is that correct?

MR. GOODMAN: Yes, ma'am.

THE COURT: You indicate on the form, Mr. Goodman, that you are unemployed at this time.

MR. GOODMAN: Yes, ma'am.

Relator, questioned regarding his last employment, stated he last worked in February, 1987 and was laid off for lack of work. He stated he had not applied for unemployment benefits because "[t]hey are just about exhausted anyway." As to his awareness of whether he was entitled to benefits, he answered:

MR. GOODMAN: If I am, it's not very much this time because I was drawing it before. I lost my main job in August of last year, '86, and I drew quite a bit of unemployment between that time and February. So I really don't know how much I have, if any, left in unemployment benefits.

He explained that most of his current personal needs and day-to-day living expenses were provided by a girlfriend he was living with. He did not own a vehicle. His personal debts and obligations were "not at all" current. Relator stated he had been to the Texas Employment Commission several times "looking through their files for work" and was "putting applications in everyday" but had not talked to a job counselor to review his status. He stated that he had earned a little over $640.00 in February. He was not asked questions nor did he volunteer information regarding payment of any money on his child support during that month. However, later in the hearing, Mrs. Goodman testified he had paid $150.00 on February 1st and $150.00 on February 15th. Relator then stated that he last had a job interview on "Monday."

At the conclusion of the above inquiry, the court master stated as follows:

THE COURT: Mr. Goodman, the Court will make the finding that you are unemployed as of today's date, March 25, 1987, however, that you were employed during the month of February; that you have not yet been to the Texas Employment Commission to determine your eligibility for unemployment or to seek job counseling, and that from August of 1986 until February of 1987, you did receive unemployment benefits in the amount of $203.00 a week; is that correct?

MR. GOODMAN: Yes, ma'am.

THE COURT: And the Court finds that in a legal sense you are not an indigent person.

At no point was relator advised of the consequences of a contempt finding, the range of punishment therefor, nor the purpose of the court master's inquiry.

The Supreme Court of Texas has held: "Contempt proceedings are generally criminal in their nature whether they grow out of criminal or civil actions. It follows then that the proceedings should conform as nearly as practicable to those in criminal cases." *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824, 829 (1960). In a later case the Court wrote as follows:

> Because contempt proceedings are triggered by actions which defy the state's authority and entail possible penal sanctions, Texas courts have consistently held that alleged constructive contemnors are entitled to procedural due process protections before they may be held in contempt.
>
> . . . .
>
> We perceive no meaningful distinction between an individual's rights which are at stake in a constructive criminal contempt hearing under article 1911a and those at stake in an ordinary criminal trial where confinement is a possible penal sanction.

*Ex parte Johnson*, 654 S.W.2d 415, 420–21 (Tex.1983).

█ In view of the above, and similar holdings, we find it inescapable that the right to counsel afforded to those accused of a crime by the provisions of the Texas Code of Criminal Procedure apply equally to alleged constructive criminal contemnors. Those rights include the following:

Art. 1.051. Right to representation by counsel [1]

(a) A defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial proceeding. The right to be represented by counsel includes the right to consult in private with counsel sufficiently in advance of a proceeding to allow adequate preparation for the proceeding.

(b) For the purposes of this article and Articles 26.04 and 26.05 of this code, "indigent" means a person who is not financially able to employ counsel.

. . . .

Art. 15.17. Duties of arresting officer and magistrate

(a) ... The magistrate shall inform in clear language the person arrested of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, of his right to request the appointment of counsel if he is indigent and cannot afford counsel....

. . . .

Art. 26.04 Court shall appoint counsel

(a) Whenever the court determines at an arraignment or at any time prior to arraignment that an accused charged with a felony or a misdemeanor punishable by imprisonment is too poor to employ counsel, the court shall appoint one or more practicing attorneys to defend him. In making the determination, the court shall require the accused to file an affidavit, and may call witnesses and hear any relevant testimony or other evidence.

(b) The appointed counsel is entitled to ten days to prepare for trial, but may waive the time by written notice, signed by the counsel and the accused. Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722.[2]

It has been held that an indigent's right of counsel applies to a proceeding to revoke probation and further, that once the constitutional right to counsel arises, the right

---

**1.** All statutory references are to the Texas Code of Criminal Procedure unless otherwise stated.

**2.** Article 26.04 has been amended by Act of Sept. 1, 1987, 70th Leg., ch. 979, sec. 2, 1987 Tex.Gen. Laws 6675, 6676–77, and now provides *inter alia:*

> (b) In determining whether a defendant is indigent, the court shall consider such factors as the defendant's income, source of income, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, spousal income, and whether the defendant has posted or is capable of posting bail. The court may not deny appointed counsel to a defendant solely because the defendant has posted or is capable of posting bail.

thereto is not dependent upon a request by the indigent defendant. *See Ex parte Bird,* 457 S.W.2d 559, 561 (Tex.Crim.App. 1970); *Swenson v. Bosler,* 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967).

It has been recognized by our Court of Criminal Appeals "[t]here are no standards set out for the guidance of trial judges in determining the actual indigency of a defendant for purposes of a trial." *Ex parte King,* 550 S.W.2d 691, 694 (Tex.Crim.App. 1977). Observing that each case must be decided upon its facts, the court in *King* held that the trial court's failure to appoint counsel violated his fourteenth and sixth amendment rights under the United States Constitution and his rights under the Texas Constitution. *Id.* at 694.

■ We hold that the appearance without counsel of an alleged constructive criminal contemnor at a contempt hearing requires the court to advise the alleged contemnor of his right to be represented by counsel and his right to request the appointment of counsel if he is indigent and cannot afford counsel. Any response to such advice sufficient to put the court on notice that the alleged contemnor may not be financially able to employ counsel requires a determination of the issue by a hearing on the question of indigency. Any lesser requirements in such circumstances would constitute a meaningful distinction between an individual's rights which are at stake in a criminal contempt hearing and those at stake in an ordinary criminal trial, such as proscribed by the Supreme Court of Texas in *Ex parte Johnson,* 654 S.W.2d at 421.

■ In the case before us, relator was not properly advised of his right to counsel either by the court master at the contempt hearing or by the district court at the revocation hearing. Furthermore, the record of the former hearing does not establish that relator was financially able to employ counsel. Accordingly, the violation of relator's rights under the fourteenth and the sixth amendments to the Constitution of the United States renders void the order of contempt and the order of revocation.

Relator is ordered discharged from custody.