### In re Adrian CASTRO, Relator.

No. 01–99–00859–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 13, 1999.

Shawn Casey, Houston, for Relator.

Marla Mitschke, Houston, for Real Party In Interest.

Panel consists of Justices COHEN, O'CONNOR, and WILSON.

## OPINION

MICHOL O'CONNOR, Justice.

Adrian Castro, relator, asserts he is illegally restrained because he was not advised of his right to counsel before the July 13, 1999 hearing on the motion to revoke suspension of commitment filed by Yolanda Ortiz, his former wife.

### Factual Background

In June 1994, the trial court signed an agreed final divorce decree. Under the decree, relator was required to pay child support to Ortiz for their son.

In late 1996, after relator fell behind on the payments, Ortiz filed a motion to enforce the child support order by contempt. In January 1997, the court conducted a hearing on the motion. At that hearing, after the relator announced he was going to represent himself and the court informed him of his right to counsel, he waived it. Relator told the court that he and Ortiz had reached an agreement relating to Ortiz's motion. According to the agreement, the court signed an order finding relator in contempt, ordering him confined for 30 days, but suspending his commitment. It placed relator on community supervision for five years on the condition, among other things, that he make monthly payments on his child support arrearage.

In January 1998, Ortiz filed a motion to revoke the suspension of relator's commitment. When relator did not appear at a

hearing on the motion scheduled in March 1999, the trial court issued a capias for his arrest. In July 1999, relator was brought before the trial court on Ortiz's motion to revoke suspension of commitment. At that hearing, the trial court did not admonish relator of his right to counsel, and he did not waive that right. As a result of that hearing, the trial court revoked the suspension of relator's commitment and ordered him confined for 30 days in accordance with its January 1997 order. When the court asked relator if he understood he would be released on the payment of $5,620, he responded that he did not have the money.

On August 2, 1999, relator filed his request for habeas corpus relief with this Court. We ordered his conditional release,[1] pending our determination of his petition.

### Standard of Review

■ A writ of habeas corpus will issue if the contempt order is void because it deprives the relator of liberty without due process of law, see *Ex parte Swate*, 922 S.W.2d 122, 124 (Tex.1996), or because it was beyond the power of the court to issue. *See Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980); *In Re Smith*, 981 S.W.2d 909, 911 (Tex.App.—Houston [1st Dist.] 1998, orig. proceeding). A writ of habeas corpus will not issue if the order is merely erroneous. *Swate*, 922 S.W.2d at 124. The relator bears the burden to show the contempt is void, not merely voidable. *Ex parte Dolenz*, 893 S.W.2d 677, 679 (Tex. App.—Dallas 1995, orig. proceeding).

### Discussion

■ Relator argues his due process rights were violated when the trial court did not advise him of his right to counsel before revoking community supervision.

The Texas Family Code provides:

(a) In a motion for enforcement or motion to revoke community service, the court must first determine whether incarceration of the respondent is a possible result of the proceedings.

(b) If the court determines that incarceration is a possible result of the proceedings, the court shall inform a respondent not represented by an attorney of the right to be represented by an attorney and, if the respondent is indigent, of the right to appointment of an attorney.

TEX. FAM. CODE § 157.163(a), (b) (1996).

Ortiz does not dispute that relator's incarceration was a possible result of her motion to revoke suspension of commitment. Accordingly, when the trial court saw relator was unrepresented by counsel and did not inform him of his right to be represented by an attorney, it violated his due process right provided by section 157.163(b). Thus, relator is entitled to habeas corpus relief.

Ortiz notes that in section 157.163(a), the legislature uses the word "or" instead of "and" in the first sentence: "In a motion for enforcement *or* motion to revoke community service...." Id. § 157.163(a) (emphasis added). From this she argues that had the Legislature intended the courts to admonish respondents of their right to counsel at both motions to enforce and motions to revoke, it would have used the word "and" instead of "or." Thus, Ortiz argues, the trial court fully complied with section 157.163(b) when it warned relator of his right to counsel before the motion for contempt hearing at which relator waived his right to counsel.

■ In construing a statute, a court may consider, among other matters, common law. TEX. GOV. CODE § 311.023(4) (1998). In *Ex parte Goodman*, 742 S.W.2d 536 (Tex.App.—Fort Worth 1987, orig. proceeding) the Fort Worth Court of Ap-

1. We conditioned relator's release on his posting a good and sufficient bond, conditioned as required by law, in the sum of $500.

peals held that a person was entitled to be advised of his right to counsel at both his contempt hearing and motion to revoke community supervision hearing. *See id.* at 541. We presume the Legislature had complete knowledge of the existing law and acted with reference to it, *see State v. Baize,* 947 S.W.2d 307, 309 (Tex.App.— Amarillo 1997), when it passed section 157.163(a).

We grant the petition for writ of habeas corpus. We order the judgment of contempt and the commitment set aside, and any sureties on relator's bond are ordered released from liability.