**In re Virgil V. MOTT, Sr., Relator.**

No. 01–04–00128–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 24, 2004.

Richard L. Fuqua II, Fuqua & Keim, L.L.P., Houston, David S. Hunter, Sugar Land, for Relator.

Bruce J. Ruzinsky, Jackson & Walker, L.L.P., Houston, for Real Party In Interest.

David M. Sloan, Sloan & Moyer, L.L.P., Houston, for Intervenor.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

EVELYN V. KEYES, Justice.

Relator Virgil V. Mott, Sr. complains of the trial court's[1] October 8, 2003 "Judgment of Contempt and Commitment Order," which ordered that relator be confined in the Fort Bend County Jail for his failure to turn over to a Fort Bend County Constable 200,000 shares of Mott Petroleum Corporation stock to satisfy a judgment debt to real party in interest J. Kelly Joy ("Joy"). Relator asserts five grounds in support of relief: (1) he is unable to comply with the underlying turnover order or to purge himself of contempt; (2) the Judgment of Contempt and Commitment Order exceeds the trial court's statutory authority; (3) he was not informed of his constitutional right to a jury trial and did not affirmatively waive it; (4) the Judgment of Contempt and Commitment Order was not signed within a reasonable time after hearing; and (5) the Judgment of Contempt and Commitment order is vague and unclear, contains irregularities, and does not comport with due process.[2] We deny habeas corpus relief and remand relator to the custody of the Fort Bend County Sheriff.

### Factual Background

The parties are involved in a post-judgment collection dispute. On December 12, 2002, Joy sued relator and a co-defendant (another company owned by relator) in Fort Bend County on a $250,000 promissory note.[3] On December 20, 2002, relator and his wife pledged to their recently retained law firm—Fuqua & Keim ("Fuqua")-their 200,000 shares of Mott Petroleum Corporation ("the stock"), granting Fuqua a security interest in the stock to secure the payment of legal fees previously incurred and to be incurred in the future.

At the time Joy commenced his suit against relator, a collection suit by South-Trust Bank against relator was also pending in a Harris County district court. The SouthTrust suit culminated, on January 10, 2003, in a $768,000 judgment in favor of SouthTrust against relator and a co-defendant.[4]

On March 12, 2003, the Fort Bend court entered an agreed final judgment of over $260,000 for Joy against relator and his co-defendant company. On April 30, 2003, Joy applied to the trial court for an order compelling relator to turn over the stock, along with copies of "all documents or records related to such property," to the Fort Bend County Constable. Relator responded that he could not do so because he did not possess or control the stock: it was in Fuqua's possession, pledged as collateral to secure the payment of attorney's fees. On May 6, 2003, the trial court ordered relator to turn over the stock. Relator failed to comply with the court's turnover order; and, in July 2003, Joy filed a motion requesting the trial court to hold relator in contempt for his failure to turn over the stock. Learning of this motion, SouthTrust intervened in the Joy suit. On September 25, 2003, SouthTrust filed its own application for turnover of the same stock to the Fort Bend County Sheriff.

---

1. The Honorable Bradley Smith, Judge of the 400th District Court of Fort Bend County, Texas.

2. Although relator presents "eight issues" for our review, he argues these issues under these five categories, and we address them accordingly.

3. *J. Kelly Joy v. Allen Parker Company and Virgil V. Mott, Sr.,;* Cause No. 02–CV–127467, in the 400th District Court of Fort Bend County, Texas.

4. *Southtrust Bank v. Virgil V. Mott, Sr.;* Cause No.2002–51024, in the 281st District Court of Harris County, Texas.

On September 29, 2003, the trial court held an unrecorded hearing on Joy's contempt motion, and, on October 8, 2003, it issued a "Judgment of Contempt and Commitment Order," in which it found relator in contempt of its May 6, 2003 turnover order and ordered him confined until he complied with the turnover order, stating that he could purge himself of contempt at any time by turning over the stock as directed by the May 6 order. On October 17, 2003, relator filed an emergency motion to reconsider the turnover order and finding of contempt. The hearing on the motion consisted of argument of counsel. No testimony was taken, and no exhibits were introduced into evidence. The trial court denied the motion.

On October 27, 2003, the trial court issued an order that the same stock be turned over to the Fort Bend County Sheriff to satisfy SouthtTrust's judgment and ordered that the Sheriff sell the stock and apply the sale proceeds to South-Trusts's January 10, 2003 judgment. On or about November 7, 2003, Joy and SouthTrust entered into an agreement to cooperate in their collection efforts against relator and to share in the proceeds of those efforts.

On November 26, 2003 (the day before Thanksgiving), Joy and SouthTrust received notice that Fuqua intended to hold a private sale of the stock on December 1, 2003. The parties dispute whether a valid sale of the stock occurred.[5]

On December 3, 2003, relator filed his second emergency motion to reconsider the turnover order and finding of contempt, based on his position that he could not comply with the turnover order because, as a result of the foreclosure sale, he did not have possession, control, or ownership of the stock. Joy filed a response, pleading that there were irregularities in the foreclosure sale and alleging that adequate consideration was not paid.[6] Our record does not contain a record of the trial court's hearing on relator's December 3 second emergency motion to reconsider the turnover order and finding of contempt. The trial court refused to withdraw or to reconsider its Judgment of Contempt and Commitment Order.

Relator was taken into custody on February 13, 2004; on the same day, he filed a petition for writ of habeas corpus with this Court. Also on the same day, we ordered relator's conditional release upon his posting a $500 bond with the Fort Bend County Sheriff pending our final determination of this matter.

## Standard of Review

▮▮▮▮ Contempt of court is defined as "disobedience to or disrespect of a court by acting in opposition to its authority." *Ex parte Chambers*, 898 S.W.2d 257, 259

---

5. Relator contends that the stock was sold to Mott Petroleum Corporation, the highest bidder, with a credit bid of $335,000, and that, as a result, the stock was transferred and delivered to the corporation, vesting the ownership interest in Mott Petroleum and extinguishing it relative to relator. The record contains an affidavit bearing a signature of Virgil V. Mott, Jr., as Vice President of Mott Petroleum, attesting that, as of December 1, 2003, relator was indebted to Mott Petroleum in the amount of $340,557 and that the indebtedness was presently due and payable and was secured by the stock pursuant to a security agreement signed by relator on De-

cember 31, 2001. In the security agreement pledging the stock to Fuqua on December 20, 2002, however, relator had warranted that he was the owner of the stock "free from any adverse claim, security interest or encumbrance save and except only the lien and security interest granted hereby."

6. Apparently, relator's pledge of the stock to Fuqua and Fuqua's subsequent purported sale of the stock to relator's son for credit are the subject of a separately filed fraudulent transfer action referenced, but not further identified, in the record.

(Tex.1995). A judgment which provides that the contemnor is to be committed unless and until he performs the affirmative act required by the court's order is a civil contempt order. *Ex parte Johns,* 807 S.W.2d 768, 770 (Tex.App.-Dallas 1991, orig. proceeding). Because the contemnor can avoid incarceration by obeying the court's order, a civil contemnor "carries the keys of his imprisonment in his own pocket." *Id.* (quoting *Shillitani v. United States,* 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966)).

■■■ A writ of habeas corpus will issue if a contempt order is void because it deprives the relator of liberty without due process of law, *see Ex parte Swate,* 922 S.W.2d 122, 124 (Tex.1996), or because it was beyond the power of the court to issue. *See Ex parte Barnett,* 600 S.W.2d 252, 254 (Tex.1980); *In re Castro,* 998 S.W.2d 935, 937 (Tex.App.-Houston [1st Dist.] 1999, orig. proceeding). A person cannot be incarcerated indefinitely for civil contempt if he or she does not have the ability to perform the condition required for release. *Ex parte Rojo,* 925 S.W.2d 654, 655–56 (Tex.1996). Thus, unless the relator has the means to purge himself of contempt, he must be discharged from jail. *Id.* at 656. The relator has the burden of conclusively establishing that he is involuntarily unable to perform the condition of release required of him in the contempt order or order of commitment. *Chambers,* 898 S.W.2d at 261–62.

### Present Inability to Comply

■■■ Relator first contends that the contempt order is void because he is presently unable to comply with the turnover order or to purge himself of contempt in the manner required by the October 8, 2003 Judgment of Contempt and Commitment Order. The place for testimony as to the impossibility of a relator's complying with a trial court's order of contempt is in the trial court in which the matter is being considered. *Ex parte Johnson,* 654 S.W.2d 415, 419 (Tex.1983). In the absence of a reporter's record, the court considering a habeas corpus application will presume that there was evidence to support the trial court's judgment of contempt. *Ex parte Linder,* 783 S.W.2d 754, 760 (Tex.App.-Dallas 1990, orig. proceeding).

Because the September 29, 2003 hearing on which the October 8, 2003 order of contempt was based was unrecorded, the appellate record contains no transcript of that hearing at which relator's evidence of his involuntary inability to comply with the court's May 6, 2003 turnover order would have been presented. Nor has relator brought forward a reporter's record of the hearing on relator's December 3 second emergency motion to reconsider the turnover order and finding of contempt, at which any testimony or exhibits on the issue of relator's then involuntary inability to comply with the October 8, 2003 order would have been considered. We presume, therefore, that there was evidence to support the trial court's judgment of contempt and that the court did not err in implicitly finding that relator was able to comply voluntarily with its turnover order.

■■■ We hold that relator has failed to establish conclusively that he was involuntarily unable to perform the condition of release required of him in the contempt order or order of commitment, either at the time the order was entered or subsequently. We deny relator's request for relief based on his contention that he is involuntarily unable to comply with the October 8, 2003 Judgment of Contempt and Commitment Order.

### Whether the Trial Court Exceeded its Statutory Authority

Relator next contends that the trial court exceeded its authority in entering its

October 8, 2003 Judgment of Contempt and Commitment Order because it did not specify the length of time that relator was to be confined, but rather ordered him confined until he complied with the May 6, 2003 turnover order. Relator contends that the commitment order is tantamount to an order that he remain in jail for the rest of his life because he is unable to deliver the stock certificates to the constable; thus, he argues the order far exceeds the maximum of six months' confinement and $500 fine for contempt stipulated in Texas Government Code, section 21.002(b). *See* TEX. GOV'T CODE ANN. § 21.002(b) (Vernon 2004).

 Relator misidentifies the controlling law. Section 21.002(b) of the Texas Government Code, which relator contends controls, applies to contempt and commitment orders in which the trial court is *punishing* a contemnor; the section does not apply to the instant situation, in which the trial court is civilly *coercing* or *compelling* relator to obey its order. *See* TEX. GOV'T CODE ANN. § 21.002(e) (Vernon 2004). Section 21.002(h)(2) of the Government Code-not section 21.002(b)-applies to this situation and provides that a person may not be confined for contempt of court longer than "the lesser of 18 months or the period from the date of confinement to the date the person complies with the court order that was the basis of the finding of contempt, if the confinement is for civil contempt." TEX. GOV'T CODE ANN. § 21.002(h)(2) (Vernon 2004). Under *Linder*, we must presume there was evidence to support the trial court's implied finding that relator was able to turn over the stock. *See* 783 S.W.2d at 760. Such being the case, relator has the keys to the jail in his pocket. *See Ex parte Johns,* 807 S.W.2d at 770. Accordingly, we deny relator's claim for relief based on his contention that the trial court exceeded its statutory authority.

### Right to a Jury Trial

Relator also contends that he was deprived of his constitutional right under the United States Constitution[7] and Texas Constitution[8] to a trial by jury when the trial court entered its Contempt Judgment and Commitment Order. Relator asserts that, when there is a charge for which confinement may exceed six months, he is constitutionally entitled to be informed of his right to a jury trial if the record does not affirmatively show that he waived his jury-trial rights.

 As previously discussed, the trial court's Judgment of Contempt and Commitment Order was of a civil-coercive nature and not of a criminal-punitive nature. A contemnor is not entitled to habeas corpus relief on the ground of deprivation of jury-trial rights when the contempt order is of a civil-coercive nature. *See Ex parte Johns,* 807 S.W.2d at 771. Accordingly, we deny relator relief on the ground of deprivation of jury-trial rights.

### Effect of Time of Signing Judgment of Contempt

Relator contends that habeas corpus relief should be granted because the judgment of contempt was not signed within a reasonable time after the contempt hearing. Relator asserts that, because the judgment was signed nine days after the contempt hearing, he is entitled to habeas corpus relief.

---

7. *See* U.S. CONST. amend. VI.

8. Relator does not analyze, argue, or provide authority to establish that his protection under the Texas Constitution exceeds or differs from that provided him by the Federal Constitution, and, therefore, we will not address his state constitutional argument. *See Arnold v. State,* 873 S.W.2d 27, 33 (Tex.Crim.App. 1993).

■ To support this assertion, relator cites cases in which the relators received habeas corpus relief because there was a three-day or longer interim between the contempt hearing and the signing of the judgment of contempt. This case is distinguishable from those cases, however, because, in them. the relators were immediately confined at the conclusion of the contempt hearing, whereas, in this case, relator was not confined until four months after the signing of the contempt judgment. As stated in *In re Markowitz,*

> The purpose of the 'short and reasonable time' requirement is to prevent the trial court from placing a person in jail indefinitely without any method of purging himself of the contempt and without knowledge of why he is being held in contempt.

25 S.W.3d 1, 3 (Tex.App.-Houston [14th Dist.] 1998, orig. proceeding). Because, in this case, relator had ample time to know why he was being held in contempt and what was required to purge himself, he is not entitled to habeas corpus relief based on the length of time between the contempt hearing and the trial court's signing of the judgment of contempt. Accordingly, we deny relator relief on the ground that the contempt judgment was not signed within a reasonable time after the contempt hearing.

### Clarity and Specificity of Judgment of Contempt

Finally, relator contends that the contempt judgment is so vague and unclear that it fails to comport with due process[9] in that the judgment merely states that relator has "failed to turn the Mott Petroleum Stock over to the Constable and is, therefore, in violation of the Turnover Order." As support for his assertion, relator cites *Ex parte Shaklee,* 939 S.W.2d 144 (Tex.1997).

■ This case is distinguishable from *Shaklee.* In *Shaklee,* the Texas Supreme Court was concerned that the trial court had assessed 30 days of confinement "for each separate violation enumerated above," but had not specified how many "separate violations" there were or whether the 30–day confinement periods were to run concurrently or consecutively. *Id.* at 145. In the instant case, the trial court is not punishing relator for an unspecified number of violations of its prior order, but rather is seeking to compel relator to comply with its turnover order. The judgment of contempt specifies that relator has violated the turnover order by not turning the stock over to the Fort Bend County Constable as ordered; the judgment of contempt further specifies that he will be released upon his doing so.

■ With respect to this issue, relator also complains that he was not afforded a record of the hearing of the contempt motion. It is axiomatic that the person complaining about a matter in the trial court has the burden to furnish to the reviewing court the record demonstrating the matter about which the person is complaining. *See Nubine v. State,* 721 S.W.2d 430, 435 (Tex.App.-Houston [1st Dist.] 1986, pet. ref'd). Relator has not provided the record to demonstrate the matter about which he complains. Therefore, the lack of a record precludes habeas corpus relief. *See* Tex.R.App. P. 52.3(j)(1)(A).

Finally, with respect to this issue, relator asserts that the trial court's May 6, 2003 order to turn over the stock to the Fort Bend County Constable to satisfy the Joy judgment and its October 8, 2003 contempt judgment enforcing that turnover order conflict with the trial court's October 27, 2003 order to turn over the stock to the Fort Bend County Sheriff to satisfy the

---

**9.** *See* U.S. Const. amend. 5, 14.

SouthTrust judgment. Joy and South-Trust have entered into an agreement to cooperate with each other to satisfy their respective judgments against relator. SouthTrust has not brought a contempt motion against relator to enforce the October 27, 2003 order. Accordingly, there is no conflict between the two turnover orders.

We deny relief sought pursuant to relator's contention that the contempt judgment is so vague and unclear that it does not comport with due process.

## Conclusion

We deny habeas corpus relief and remand relator to the custody of the Fort Bend County Sheriff to resume his incarceration pursuant to the trial court's October 8, 2003 Judgment of Contempt and Commitment Order.